## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| SAMSON RESOURCES CORPORATION, *et al.*,[1] | ) Case No. 15-11934 (___) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION TAXES AND FEES

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state the following in support of this motion.

### Relief Requested

1.      By this motion, the Debtors seek entry of interim and final orders, substantially in

the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, authorizing the Debtors to

remit and pay certain prepetition taxes and fees that will become payable during the pendency of

these chapter 11 cases.  The Debtors also request that the Court schedule a final hearing within

approximately 25 days of the commencement of these chapter 11 cases to consider entry of the

final order.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended*

*Standing Order of Reference from the United States District Court for the District of Delaware*,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Geodyne Resources, Inc. (2703); Samson Contour Energy Co. (7267); Samson Contour Energy E&P, LLC (2502); Samson Holdings, Inc. (8587); Samson-International, Ltd. (4039); Samson Investment Company (1091); Samson Lone Star, LLC (9455); Samson Resources Company (8007); and Samson Resources Corporation (1227).  The location of parent Debtor Samson Resources Corporation's corporate headquarters and the Debtors' service address is:  Two West Second Street, Tulsa, Oklahoma 74103.

dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a)(8), and 541 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(m).

## Background

5.      The The Debtors are a privately held onshore oil and gas exploration and production company with headquarters in Tulsa, Oklahoma and operations primarily located in Colorado, Louisiana, North Dakota, Oklahoma, Texas, and Wyoming.  The Debtors operate, or have royalty or working interests in, approximately 8,700 oil and gas production sites.

6.      Each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 16, 2015 (the "Petition Date"). The facts and circumstances supporting this motion are set forth in the *Declaration of Philip Cook in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2], which is incorporated by reference.

7.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The

Debtors have concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

### The Debtors' Tax and Fee Obligations

8.     The Debtors collect, withhold, and incur income, sales, use, franchise, severance, and property taxes, as well as other business, environmental, and regulatory fees (collectively, the "Taxes and Fees").[2]  The Debtors remit the Taxes and Fees to various federal, state, and local governments, including taxing and licensing authorities (collectively, the "Authorities").  A schedule identifying the Authorities is attached hereto as **Exhibit C**.[3]  Taxes and Fees are remitted and paid by the Debtors through checks and electronic funds transfers that are processed through their banks and other financial institutions.  The Debtors estimate that approximately $45.4 million in Taxes and Fees relating to the prepetition period will become due and owing to the Authorities after the Petition Date.  Of this amount, approximately $3.1 million will become due and payable within 21 days of the Petition Date.

9.     The Debtors pay the Taxes and Fees to the Authorities on a periodic basis, remitting them monthly, quarterly, semiannually, or annually depending on the nature and incurrence of a particular Tax or Fee.  Although the Debtors believe that they are substantially current with respect to their payment of Taxes and Fees, the Debtors seek authority pursuant to this motion to make such payments where:  (a) Taxes and Fees accrue or are incurred postpetition; (b) Taxes and Fees accrued or were incurred prepetition but were not paid

---

[2]     By this motion, the Debtors do not seek the authority to collect and remit state and federal employee-related taxes and withholdings.  Such relief is instead requested in the *Debtors' Motion for Entry of Interim and Final Orders Authorizing the Debtors to (I) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, (II) Continue Non-Insider Incentive Plans, and (III) Continue Employee Benefits Programs*, filed contemporaneously herewith.

[3]     Although **Exhibit C** is intended to be comprehensive, the Debtors may have inadvertently omitted Authorities from **Exhibit C**.  By this motion, the Debtors request relief with respect to Taxes and Fees payable to all Authorities, regardless of whether such Authority is specifically identified on **Exhibit C**.

KE 34982496

prepetition, or were paid in an amount less than actually owed; (c) Taxes and Fees paid prepetition by the Debtors were lost or otherwise not received in full by any of the Authorities; or (d) Taxes and Fees incurred for prepetition periods may become due after the commencement of these chapter 11 cases.

10.     The Debtors believe that failing to pay the Taxes and Fees could materially disrupt the Debtors' business operations in several ways.  First, the Authorities could initiate audits, suspend operations, file liens, or seek to lift the automatic stay, which would unnecessarily divert the Debtors' attention from the reorganization process.  Second, failing to pay Taxes and Fees could subject certain of the Debtors' directors and officers to claims of personal liability, which would likely distract those key employees from their duties related to the Debtors' restructuring.  Third, failing to pay certain of the Taxes and Fees, particularly franchise taxes, would likely cause the Debtors to lose their ability to conduct business in certain jurisdictions.  Finally, unpaid Taxes and Fees may result in penalties, the accrual of interest, or both, which could negatively impact the Debtors' businesses.

11.     In addition, the Debtors collect and hold certain outstanding tax liabilities in trust for the benefit of the applicable Authorities, and these funds may not constitute property of the Debtors' estates.

12.     The Taxes and Fees are summarized as follows:

| Category | Description | Approximate Amount Accrued as of Petition Date | Approximate Amount Due Within 21 Days |
|---|---|---|---|
| Sales and Use Taxes | Taxes imposed on the sale and use of certain goods and services. | $2,000 | $2,000 |
| Income and Withholding Taxes | Taxes imposed on the Debtors' income and required to conduct business in the ordinary course. | $424,000 | $40,000 |
| Franchise Taxes | Taxes required to conduct business in the ordinary course. | $0 | $0 |
| Property Taxes | Taxes and obligations related to real and personal property holdings. | $34,500,000 | $0 |
| Severance Taxes | Taxes related to oil and gas production or natural resource extraction. | $10,400,000 | $3,000,000 |
| Environmental and Business Fees | Fees related to compliance with environmental laws and regulations, licensing fees, and other fees paid to state agencies. | $53,000 | $10,000 |
| **Total** | | **$45,379,000** | **$3,052,000** |

## I.     Sales and Use Taxes

13.     The Debtors incur, collect, and remit sales taxes to the Authorities in connection with the sale and distribution of their production.  Additionally, the Debtors purchase a variety of equipment, materials, and supplies necessary for the operation of their business from vendors who may not operate in the state where the property is to be delivered and, therefore, do not charge the Debtors sales tax in connection with such purchases.  In these cases, applicable law generally requires the Debtors to subsequently pay use taxes on such purchases to the applicable Authorities.  The Debtors generally remit sales and use taxes on a monthly basis.

14.     The Debtors historically remit over $826,000 in the aggregate in sales and use taxes per year to the Authorities.[4]  As of the Petition Date, the Debtors estimate that they have

---

[4]     In 2014, the Debtors paid approximately $926,000 in sales and use taxes.  This amount includes a one-time $100,000 payment related to a sales and use tax audit paid to Webster Parish, Louisiana.

KE 34982496

incurred or collected approximately $2,000 in sales and use taxes that have not been remitted to the relevant Authorities, all of which will become due and owing during the first 21 days following the Petition Date.[5]  Accordingly, the Debtors seek authority to pay and remit any such prepetition sales and use taxes to the relevant authorities.

## II.      Income and Withholding Taxes

15.      In the ordinary course of operating their businesses, the Debtors incur state and federal income taxes.  The Debtors pay income taxes on a quarterly basis.  For tax year 2013, the Debtors had no federal income tax liability due to net losses from continuing operations.  In 2014, the Debtors also had net losses from continuing operations, but paid approximately $733,000 in federal income tax.  The Debtors did not have any state income tax liability in 2014 due to net losses from continuing operations.  The Debtors believe they are current with respect to payment of income taxes, but include this description out of an abundance of caution and seek authority to pay income taxes if any become due.

16.      The Debtors are also required to remit withholding taxes to cover state income taxes for non-residents in certain states in which they operate, as well as federal withholding taxes.  The Debtors pay withholding taxes on either a monthly or quarterly basis.  In 2014, the Debtors paid approximately $2.6 million in withholding taxes.  As of the Petition Date, the Debtors estimate that they owe approximately $424,000 to the relevant Authorities on account of prepetition withholding taxes, approximately $40,000 of which will become due and owing during the first 21 days following the Petition Date.

---

[5]      The Debtors are involved in several ongoing sales and use tax audits, which may result in an increase in the amount of sales and use taxes accrued prepetition.

III.    **Franchise Taxes**

17.    The Debtors are required to pay various state franchise taxes in order to continue conducting their businesses pursuant to state laws.  The Debtors typically pay the franchise taxes annually in either March, May, June, or August.   Additionally, the Debtors make estimated payments for franchise taxes in Delaware three times a year.   In 2014, the Debtors paid approximately $214,000 in franchise taxes.[6]  The Debtors believe they are current with respect to payment of franchise taxes, but include this description out of an abundance of caution and seek authority to pay franchise taxes if any become due.

IV.    **Property Taxes**

18.    State and local laws in the jurisdictions where the Debtors operate generally grant Authorities the power to levy property taxes against the Debtors' real and personal property.  In Wyoming, this includes the ability to levy property taxes on the Debtors' production, in addition to the Debtors' real property.  To avoid the imposition of statutory liens on their real and personal property, the Debtors typically pay property taxes in the ordinary course of business on an annual or semi-annual basis.   The Debtors have historically remitted approximately $29.4 million in property taxes per year to the applicable Authorities.  This amount includes property taxes collected from third parties and paid to the applicable Authorities.  For example, where the Debtors act as the operator on an oil or gas lease they remit the full amount of property taxes due on the lease to the Authorities, but this amount is offset by *pro rata* contributions for property taxes from the non-operating joint interest holders on such lease.

19.    The Debtors estimate that they have accrued approximately $34.5 million in property taxes as of the Petition Date.  This amount includes prepetition accruals for certain

---

[6]    In 2015, the Debtors paid additional franchise taxes, for 2014 tax liability, totaling approximately $502,000.

property taxes related to 2014 production, which will come due in November 2015, as well as prepetition accruals for certain property taxes related to 2015 production, which will come due in May and November 2016.  The Debtors do not anticipate that any of the property taxes will become due and owing during the first 21 days following the Petition Date.

## V.        Severance Taxes

20.        A number of the jurisdictions in which the Debtors operate impose severance taxes.[7]  Generally, severance taxes are a tax on "severing" natural resources, such as oil and gas, from the land or waters within a state or jurisdiction.  Severance taxes vary by state, but are typically calculated as a percentage of either the value or volume of oil and gas produced, or some combination thereof.  The Debtors pay severance taxes on either a monthly or quarterly basis.  In 2014, the Debtors paid approximately $53.9 million in severance taxes to the applicable Authorities.[8]  As of the Petition Date, the Debtors estimate that they owe approximately $10.4 million to the relevant Authorities on account of prepetition severance taxes, approximately $3.0 million of which will become due and owing during the first 21 days following the Petition Date.

## VI.        Environmental and Business Fees

21.        The Debtors incur a variety of fees related to environmental and conservation laws and regulations, business licensing and annual report fees, permitting, and participation in state regulatory agencies and boards.  The Debtors remit these fees to the relevant Authorities on a monthly, quarterly, or annual basis.  In general, the Debtors pay to the appropriate Authorities

---

[7]    The Debtors pay severance taxes in Colorado, Louisiana, Mississippi, New Mexico, North Dakota, Oklahoma, Texas, Wyoming, as well as to the Comanche, Kiowa, and Southern Ute Tribes.

[8]    This amount includes severance taxes paid by the Debtors on account of gas taken in-kind at certain properties where the Debtors operate.  This amount also includes severance taxes paid by the Debtors at certain properties where the Debtors may sell gas on behalf of themselves and third parties, including royalty interest holders, overriding royalty interest owners, and joint interest holders.

KE 34982496

such fees as the Debtors deem reasonably appropriate for the operation of their businesses.  For example, the Debtors pay a monthly assessment to the Oklahoma Tax Commission to fund the Oklahoma Energy Resources Board, a state agency that is voluntarily funded by oil and natural gas producers and conducts environmental restoration of abandoned oil wells.[9]  Additionally, the Debtors remit certain fees required to be paid pursuant to applicable laws and regulations where the Debtors operate, including, among others, the Louisiana Oilfield Site Restoration Law and the Colorado Oil and Gas Conservation Act governing environmental restoration and conservation.  *See, e.g.*, LA. REV. STAT. ANN. § 30:80 *et seq.*; COLO. REV. STAT. ANN. § 36-60-100 *et seq.*  In 2014, the aggregate amount of fees that the Debtors paid was approximately $800,000.  As of the Petition Date, the Debtors estimate that their accrued but unpaid liabilities for fees total approximately $53,000, approximately $10,000 of which will become due and owing during the first 21 days following the Petition Date.

## Basis for Relief

**I.    Certain of the Taxes and Fees May Not Be Property of the Debtors' Estates.**

22.    Many of the Taxes and Fees are collected or withheld by the Debtors on behalf of the applicable Authorities and are held in trust by the Debtors.  *See, e.g.*, I.R.C. § 7501 (stating that certain taxes and fees are held in trust).  As such, these Taxes and Fees are not property of the Debtors' estates under section 541 of the Bankruptcy Code.  *See, e.g.*, 11 U.S.C. § 541(d); *Begier v. IRS*, 496 U.S. 53, 57–60 (1990) (holding that any prepetition payment of trust fund taxes is not an avoidable preference since funds are not the debtor's property); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 96 (3d Cir. 1994) (holding that withheld income taxes were subject to trust); *In re Shank*, 792 F.2d 829, 833 (9th Cir. 1986) (finding that sales tax required

---

[9]    The Debtors are entitled to seek recovery of the monthly fees collected to fund the Oklahoma Energy Resources Board, and have, historically, sought this reimbursement.

by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. N.Y. State Tax Comm'n*, 760 F.2d 432, 435–36 (2d Cir. 1985) (same).  To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under section 541(d) of the Bankruptcy Code.  *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104–05 (Bankr. E.D. Pa. 1987).  Because the Debtors may not have an equitable interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay those funds to the Authorities as they become due.[10]

## II.    Certain of the Taxes and Fees May Be Secured or Priority Claims Entitled to Special Treatment under the Bankruptcy Code.

23.    Claims for certain of the Taxes and Fees are or may be priority claims entitled to payment before general unsecured claims.  *See* 11 U.S.C. § 507(a)(8) (describing taxes entitled to priority treatment).  Moreover, to the extent that such amounts are entitled to priority treatment under the Bankruptcy Code, the respective Authorities may attempt to assess fees, interest, and penalties if such amounts are not paid.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").  Claims entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code must be paid in full under a confirmable plan pursuant to section 1129(a)(9)(C) of the Bankruptcy Code.  Therefore, payment of certain of the Taxes and Fees at this time only affects the timing of the payment for the amounts at issue and will not unduly prejudice the rights and recoveries of junior creditors.

---

[10]    For the avoidance of doubt, the Debtors hereby request authority to pay the Taxes and Fees as provided herein regardless of whether such Taxes and Fees constitute trust fund obligations.

KE 34982496

**III.    Payment of the Taxes and Fees as Provided Herein Is a Sound Exercise of the Debtors' Business Judgment.**

24.     The Court may also authorize the Debtors to pay the Taxes and Fees under section 363(b)(1) of the Bankruptcy Code, which provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b)(1).    Under this section, a court may authorize a debtor to pay certain prepetition claims.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of prepetition wages pursuant to section 363(b) of the Bankruptcy Code).  To do so, courts require that the debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (citations omitted); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).    Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

25.     This standard is satisfied here.  The Debtors' ability to pay the Taxes and Fees is critical to their continued and uninterrupted operations.  If certain Taxes and Fees remain unpaid, the Authorities may seek to recover such amounts directly from the Debtors' directors, officers, or employees, thereby distracting such key personnel from the administration of the Debtors' chapter 11 cases.  *See, e.g.*, *Schmehl v. Helton*, 662 S.E.2d 697, 707 (W. Va. 2008) (noting that corporate officers may be held responsible for payment of certain corporate taxes).    Any collection action on account of such claims, and any potential ensuing liability, would distract

11

the Debtors and their personnel to the detriment of all parties in interest. The dedicated and active participation of the Debtors' officers and employees is integral to the Debtors' continued operations and essential to the orderly administration and, ultimately, the success of these chapter 11 cases.

26.    Furthermore, the Debtors' obligation to pay the Taxes and Fees may ultimately result in increased tax liability for the Debtors if interest and penalties accrue on the Tax and Fee claims, which amounts may also be entitled to priority treatment. Such a result would be contrary to the best interests of the Debtors' estates and all stakeholders. As noted above, many of the Taxes and Fees may be entitled to priority status pursuant to section 507(a)(8)(C) of the Bankruptcy Code. As priority claims, these obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied. To the extent that the Debtors are not able to timely pay the prepetition Taxes and Fees, they may ultimately be required to pay those amounts with additional interest and penalties. The Debtors' failure to pay the prepetition Taxes and Fees as they come due may, thus, ultimately increase the amount of priority claims held by the Authorities against the Debtors' estates to the detriment of the Debtors' general unsecured creditors. *See* 11 U.S.C. § 507(a)(8)(C), (G). Accordingly, the Court should grant the Debtors authority to pay the prepetition Taxes and Fees as provided herein.

27.    Courts in this jurisdiction have authorized payment of prepetition taxes under section 363(b) of the Bankruptcy Code. *See, e.g.*, *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 4, 2014) (authorizing debtors to pay prepetition taxes and fees in the ordinary course of business); *In re GSE Envtl., Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 6, 2014) (same); *In re Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014)

KE 34982496

(same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 4, 2013) (same); *In re Maxcom Telecommunicaciones S.A.B. de C.V.*, No. 13-11936 (PJW) (Bankr. D. Del. July 25, 2013) (same); *In re Dex One Corp.*, No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013) (same).[11]

### Processing of Checks and Electronic Fund Transfers Should Be Authorized

28.    The Debtors have sufficient funds to pay any amounts related to the Taxes and Fees in the ordinary course of business.  Under the Debtors' existing cash management system, the Debtors have made arrangements to readily identify checks or electronic funds transfer requests relating to the Taxes and Fees, as applicable.  The Debtors believe there is minimal risk that checks or electronic fund transfer requests that the Court has not authorized will be inadvertently made.  Thus, the Debtors request that the Court authorize all applicable financial institutions to receive, process, honor, and pay any and all checks or electronic fund transfer requests in respect of the Taxes and Fees.

### The Requirements of Bankruptcy Rule 6003 Are Satisfied

29.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, authorizing the Debtors to pay the Taxes and Fees that accrued prior to the Petition Date as provided herein is integral to the Debtors' ability to smoothly transition their operations into these chapter 11 cases.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their business in the ordinary

---

[11]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

KE 34982496

course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

30.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

31.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

32.     The Debtors will provide notice of this motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agent under the Debtors' first lien credit facility; (d) counsel to the agent under the Debtors' first lien credit facility; (e) the agent under the Debtors' second lien credit facility; (f) counsel to the agent under the Debtors' second lien credit

facility; (g) the indenture trustee under the Debtors' 9.75% senior notes due 2020; (h) counsel to certain majority holders of the existing common stock of the Debtors; (i) holders of the existing preferred stock of the Debtors; (j) counsel to holders of the existing preferred stock of the Debtors; (k) the United States Attorney's Office for the District of Delaware; (l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; (n) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (o) the Authorities; and (p) the state attorneys general for states in which the Debtors conduct business.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

33.     No prior request for the relief sought in this motion has been made to this or any other court.

*[Remainder of page intentionally left blank]*

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated:  September 17, 2015
Wilmington, Delaware

*/s/ Domenic E. Pacitti*

Domenic E. Pacitti (DE Bar No. 3989)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street, Suite 1000
Wilmington, Delaware 19801
Telephone:    (302) 426-1189
Facsimile:    (302) 426-9193

-and -

Morton Branzburg (*pro hac vice* admission pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street, Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:    (215) 569-2700
Facsimile:    (215) 568-6603

-and-

Paul M. Basta, P.C. (*pro hac vice* admission pending)
Edward O. Sassower, P.C. (*pro hac vice* admission pending)
Joshua A. Sussberg, P.C. (*pro hac vice* admission pending)
Ryan J. Dattilo (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

James H.M. Sprayregen, P.C. (*pro hac vice* admission pending)
Brad Weiland (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Proposed Co-Counsel for the Debtors and Debtors in Possession*