**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| SAMSON RESOURCES CORPORATION, *et al.*,[1] | ) | Case No. 15-11934 (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION OF**
**SAMSON RESOURCES CORPORATION AND ITS DEBTOR AFFILIATES**

Paul M. Basta, P.C. (*pro hac vice* pending)
Edward O. Sassower, P.C. (*pro hac vice* pending)
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Ryan J. Dattilo (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

-and-

James H.M. Sprayregen, P.C. (*pro hac vice* pending)
Brad Weiland (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

Domenic E. Pacitti (DE Bar No. 3989)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
919 N. Market Street
Suite 1000
Wilmington, Delaware
Telephone:      (302) 426-1189
Facsimile:      (302) 426-9193

-and-

Morton Branzburg (*pro hac vice* pending)
**KLEHR HARRISON HARVEY BRANZBURG LLP**
1835 Market Street
Suite 1400
Philadelphia, Pennsylvania 19103
Telephone:      (215) 569-2700
Facsimile:      (215) 568-6603

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

---

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.   THIS DRAFT PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Geodyne Resources, Inc. (2703); Samson Contour Energy Co. (7267); Samson Contour Energy E&P, LLC (2502); Samson Holdings, Inc. (8587); Samson-International, Ltd. (4039); Samson Investment Company (1091); Samson Lone Star, LLC (9455); Samson Resources Company (8007); and Samson Resources Corporation (1227).  The location of parent Debtor Samson Resources Corporation's corporate headquarters and the Debtors' service address is:  Two West Second Street, Tulsa, Oklahoma 74103.

**TABLE OF CONTENTS**

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW**...................................................................................................**1**
    A.           Defined Terms ................................................................................ 1
    B.           Rules of Interpretation .................................................................. 14
    C.           Computation of Time ..................................................................... 14
    D.           Governing Law ............................................................................... 14
    E.           Reference to Monetary Figures ..................................................... 15
    F.           Reference to the Debtors or the Reorganized Debtors .................. 15
    G.          Controlling Document ................................................................... 15

**ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS** .......................**15**
    A.           Administrative Claims ................................................................... 15
    B.           Professional Compensation ........................................................... 16
    C.           Priority Tax Claims ....................................................................... 16
    D.           Statutory Fees ................................................................................ 16

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**............**16**
    A.           Summary of Classification ............................................................ 16
    B.           Treatment of Claims and Interests ............................................... 17
    C.           Allowance of Certain Claims ........................................................ 20
    D.           Special Provision Governing Unimpaired Claims ........................ 20
    E.           Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.............................................................................. 21
    F.           Elimination of Vacant Classes ...................................................... 21
    G.          Voting Classes; Presumed Acceptance by Non-Voting Classes .... 21
    H.           Presumed Acceptance and Rejection of the Plan .......................... 21
    I.           Intercompany Interests .................................................................. 21
    J.           Subordinated Claims ..................................................................... 21

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** .............................**21**
    A.           Restructuring Transactions ............................................................ 21
    B.           Sources of Consideration for Plan Distributions........................... 22
    C.           Corporate Existence ....................................................................... 23
    D.           Vesting of Assets in the Reorganized Debtors............................... 23
    E.           Cancellation of Existing Securities ............................................... 23
    F.           Corporate Action ........................................................................... 24
    G.          New Organizational Documents .................................................... 24
    H.           Directors and Officers of the Reorganized Debtors....................... 25
    I.           Effectuating Documents; Further Transactions ............................. 25
    J.           Exemption from Certain Taxes and Fees ...................................... 25
    K.           Preservation of Causes of Action.................................................. 25
    L.           Release of Avoidance Actions ....................................................... 26
    M.          Director and Officer Liability Insurance....................................... 26
    N.          Management Incentive Plan............................................................ 26
    O.          Employee and Retiree Benefits...................................................... 27
    P.           Claims Administration Responsibilities ....................................... 27
    Q.          No Substantive Consolidation ...................................................... 27

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .....................**28**
    A.           Assumption and Rejection of Executory Contracts and Unexpired Leases..................... 28
    B.           Claims Based on Rejection of Executory Contracts or Unexpired Leases ...................... 28
    C.           Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ................... 28

D.      Indemnification Obligations ...................................................................................29
E.      Insurance Policies .................................................................................................29
F.      Restructuring Support Agreement .........................................................................30
G.      Modifications, Amendments, Supplements, Restatements, or Other Agreements...........30
H.      Reservation of Rights ............................................................................................30
I.      Nonoccurrence of Effective Date...........................................................................30
J.      Contracts and Leases Entered into After the Effective Date.............................30

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ........................................**30**
A.      Timing and Calculation of Amounts to Be Distributed ........................................30
B.      Delivery of Distributions and Undeliverable or Unclaimed Distributions.......................31
C.      Registration or Private Placement Exemption .......................................................32
D.      Compliance with Tax Requirements.......................................................................33
E.      Allocations.............................................................................................................33
F.      No Postpetition Interest on Claims .......................................................................33
G.      Setoffs and Recoupment .......................................................................................34
H.      Claims Paid or Payable by Third Parties .............................................................34

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT,  UNLIQUIDATED, AND
     DISPUTED CLAIMS**...........................................................................................**34**
A.      Allowance of Claims .............................................................................................34
B.      Claims and Interests Administration Responsibilities ..........................................35
C.      Estimation of Claims .............................................................................................35
D.      Adjustment to Claims Without Objection................................................................35
E.      Time to File Objections to Claims .........................................................................35
F.      Disallowance of Claims .........................................................................................35
G.      Amendments to Claims ..........................................................................................36
H.      No Distributions Pending Allowance ....................................................................36
I.      Distributions After Allowance ...............................................................................36

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ....................**36**
A.      Compromise and Settlement of Claims, Interests, and Controversies ..................36
B.      Discharge of Claims and Termination of Interests ...............................................36
C.      Term of Injunctions or Stays .................................................................................37
D.      **Release of Liens**.....................................................................................................37
E.      **Debtor Release** .....................................................................................................37
F.      **Third Party Release** ...............................................................................................38
G.      **Exculpation**.............................................................................................................39
H.      **Injunction** .............................................................................................................39
I.      Protection Against Discriminatory Treatment .......................................................39
J.      Recoupment ...........................................................................................................40
K.      Subordination Rights. ...........................................................................................40

**ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF
     THE PLAN** ...........................................................................................................**40**
A.      Conditions Precedent to the Confirmation Date ...................................................40
B.      Conditions Precedent to the Effective Date ..........................................................41
C.      Waiver of Conditions.............................................................................................42
D.      Substantial Consummation ...................................................................................42
E.      Effect of Non-Occurrence of Conditions to the Effective Date ............................42

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**..............................**42**
A.      Modification and Amendments ..............................................................................42
B.      Effect of Confirmation on Modifications ...............................................................43
C.      Revocation or Withdrawal of the Plan ..................................................................43

**ARTICLE XI. RETENTION OF JURISDICTION** ...........................................................................**43**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ......................................................................**45**
    A.                 Immediate Binding Effect.......................................................................45
    B.                 Additional Documents ............................................................................45
    C.                 Dissolution of the Committee .................................................................45
    D.                Reservation of Rights .............................................................................45
    E.                 Successors and Assigns ..........................................................................46
    F.                 Service of Documents.............................................................................46
    G.                Term of Injunctions or Stays .................................................................46
    H.                Entire Agreement...................................................................................46
    I.                  Exhibits..................................................................................................47
    J.                  Nonseverability of Plan Provisions........................................................47
    K.                Votes Solicited in Good Faith................................................................47
    L.                 Closing of Chapter 11 Cases..................................................................47

**INTRODUCTION**

Samson Resources Corporation ("Samson") and its debtor affiliates, as debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") propose this joint plan of reorganization (together with the documents comprising the Plan Supplement, the "Plan") for the resolution of outstanding Claims against, and Interests in, the Debtors. Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof. Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.  *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.  "*2011 Acquisition*" means the December 2011 buyout of the Debtors led by the Sponsors.

2.  "*Accordion*" means the increase of the initial $450 million amount of the Rights Offering by an amount of $35 million in accordance with the terms set forth in the Restructuring Support Agreement and the Backstop Commitment Agreement, solely in the event that the Effective Date Liquidity is projected on the Liquidity Calculation Date to be less than $350 million.

3.  "*Accrued Professional Compensation*" means, at any given time, all accrued, contingent, and/or unpaid fees and expenses (including success fees) for legal, financial advisory, accounting, and other services and reimbursement of expenses that are awardable and allowable under sections 328, 330, or 331 of the Bankruptcy Code or otherwise rendered allowable before the Effective Date by any retained estate Professional in the Chapter 11 Cases, (a) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been Filed for any such amount) and (b) after applying any retainer that has been provided to such Professional. To the extent that the Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation. For the avoidance of doubt, Accrued Professional Compensation includes unbilled fees and expenses incurred on account of services provided by Professionals that have not yet been submitted for payment, except to the extent that such fees and expenses are either denied or reduced by a Final Order by the Court or any higher court of competent jurisdiction.

4.  "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtors' Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Fee Claims; and (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

5.  "*Administrative Claims Bar Date*" means the first Business Day that is 30 days following the Effective Date, except as specifically set forth in the Plan or a Final Order.

6.  "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

1

7.        "*Allowed*" means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Court a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Court. Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim. "Allow" and "Allowing" shall have correlative meanings.

8.        "*Avoidance Actions*" means any and all actual or potential Claims and Causes of Action to avoid a transfer of property or an obligation incurred by the Debtors arising under chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code.

9.        "*Backstop Commitment Agreement*" means the Backstop Commitment Agreement by and among the Debtors and the Backstop Parties (as amended, supplemented, or otherwise modified from time to time), a form of which shall be attached to the Backstop Order and which is in form and substance reasonably acceptable to the Backstop Parties and the Sponsors (solely with respect to the Sponsor Consent Right).

10.        "*Backstop Expense Reimbursement*" means the Expense Reimbursement of the Backstop Party Expenses and the Agent Fees, each as defined in the Backstop Order.

11.        "*Backstop Holdback Equity*" means an aggregate number of shares of New Common Stock at a 20 percent discount to the $1.275 billion total enterprise value that shall be sold to and purchased by the Equity Backstop Parties, pursuant to the terms of the Backstop Commitment Agreement, for 22.5 percent of the New Money Investment.

12.        "*Backstop Order*" means an order of the Court, in form and substance reasonably acceptable to the Required Backstop Parties, authorizing and approving, without limitation, (a) the Debtors' entry into the Backstop Commitment Agreement, (b) the distribution of the Equity Grant, (c) the Debtors' payment of the Backstop Transaction Fee and the Backstop Expense Reimbursement, (d) the Debtors' sale of the Backstop Holdback Equity to the Backstop Parties, and (e) the Debtors' incurrence of the indemnification obligations set forth in the Backstop Commitment Agreement.

13.        "*Backstop Parties*" means, collectively, the Debt Backstop Parties and the Equity Backstop Parties.

14.        "*Backstop Transaction Fee*" means $10 million to be paid in Cash on the Effective Date to the Backstop Parties (on a pro rata basis based on each Backstop Party's backstop commitment, as listed on Appendix A to the Restructuring Support Agreement, and in accordance with the terms of the Backstop Commitment Agreement).

15.        "*Bankruptcy Code*" means title 11 of the United States Code, as amended and in effect during the pendency of the Chapter 11 Cases.

16.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Court.

17.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

18.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

19.     "*Cash Collateral Order*" means the interim order or the Final Order, as applicable, entered by the Court on [_____],2015, and [_____], 2015, respectively, in form and substance reasonably acceptable to the Debtors, the Sponsors (solely with respect to the Sponsor Consent Right), and the Required Backstop Parties, authorizing the Debtors to use the First Lien Lenders' and Second Lien Lenders' collateral (including cash collateral) and granting adequate protection to the First Lien Lenders and Second Lien Lenders.

20.     "*Causes of Action*" means any action, claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law, or in equity or pursuant to any other theory of law.  For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any Claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, and usury; and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

21.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Court and (b) when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Court.

22.     "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

23.     "*Claims Bar Date*" means the date or dates to be established by the Court by which Proofs of Claim must be Filed.

24.     "*Claims Bar Date Order*" means that certain order entered by the Court establishing the Claims Bar Date.

25.     "*Claims Objection Deadline*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtors or the Reorganized Debtors, as applicable, or by an order of the Court for objecting to such Claims.

26.     "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

27.     "*Class*" means a category of holders of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

28.     "*Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

29.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

30.     "*Confirmation Date*" means the date upon which the Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

31.     "*Confirmation Hearing*" means the hearing held by the Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

32.     "*Confirmation Order*" means a Final Order of the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

33.     "*Consenting Lenders*" means those Second Lien Lenders party to the Restructuring Support Agreement from time to time (including Second Lien Lenders that are Backstop Parties or are funds managed by or advised by Backstop Parties), together with their respective successors and permitted assigns.

34.     "*Consummation*" means the occurrence of the Effective Date.

35.     "*Convenience Claim*" means a Claim, other than an Unsecured Debt Claim, that would otherwise be an Allowed General Unsecured Claim in an Allowed amount that is greater than $0 but less than or equal to $[35,000]; *provided* that a holder of a General Unsecured Claim in an Allowed amount greater than $[35,000], other than an Unsecured Debt Claim, may elect to have such Claim irrevocably reduced to $[35,000] and treated as a Convenience Claim for purposes of the Plan in full and final satisfaction of such Claim.

36.     "*Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Delaware.

37.     "*Cure Claim*" means a monetary Claim based upon the Debtors' defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

38.     "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases, (b) Cure Claims to be paid in connection therewith and (c) procedures for resolution by the Court of any related disputes.

39.     "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of any of the Debtors for current or former directors', managers', and officers' liability.

40.     "*Debt Backstop Parties*" means those parties making a debt backstop commitment pursuant to the Backstop Commitment Agreement, each solely in its capacity as a provider of such debt backstop commitment.

41.     "*Debtors*" means, collectively:  Geodyne Resources, Inc.; Samson Contour Energy Co.; Samson Contour Energy E&P, LLC; Samson Holdings, Inc.; Samson-International, Ltd.; Samson Investment Company; Samson Lone Star, LLC; Samson Resources Company; and Samson Resources Corporation, the debtors and debtors in possession in the Chapter 11 Cases.

42.     "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that (a) has been disallowed by a Final Order, (b) is Scheduled as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court or otherwise deemed timely filed under applicable law or this Plan, (c) is not Scheduled and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Court pursuant to either the Bankruptcy Code or any Final Order of the Court or otherwise deemed timely filed under applicable law or this

4

Plan, (d) has been withdrawn by agreement of the applicable Debtor and the holder thereof, or (e) has been withdrawn by the holder thereof.

43.     "*Disclosure Statement*" means the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Samson Resources Corporation and its Debtor Affiliates*, dated as of September 16, 2015, as may be amended from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law, and which shall be in form and substance reasonably acceptable to the Debtors, the Sponsors (solely with respect to the Sponsor Consent Right), the Required Backstop Parties, and the Majority Consenting Lenders.

44.     "*Disputed*" means a Claim that is not yet Allowed.

45.     "*Disputed Claim Amount*"  means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim:  (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtors or the Reorganized Debtors, as applicable, and the holder of such Disputed Claim; or (iii) if a request for estimation is Filed by any party, the amount at which such Disputed Claim is estimated by the Court, (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim: (i) an amount agreed to by the Debtors or the Reorganized Debtors, as applicable, and the holder of such Disputed Claim; (ii) the amount estimated by the Court with respect to such Disputed Claim, (iii) the amount estimated in good faith by the Debtors or Reorganized Debtors, as applicable, with respect to the Disputed Claim, or (c) zero, if the Disputed Claim was listed on the Schedules as unliquidated, contingent, or disputed and no Proof of Claim was Filed, or deemed to have been Filed, by the applicable Claims Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Court.

46.     "*Distribution Record Date*" means the date for determining which Holders of Claims or Interests are eligible to receive distributions hereunder and shall be the Voting Deadline or such other date as designated in a Final Order of the Court.

47.     "*DTC*" means Depository Trust Company.

48.     "*Effective Date*" means, with respect to the Plan, the date that is a Business Day selected by the Debtors with the consent of the Required Backstop Parties on which:  (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article IX.B have been satisfied or waived (in accordance with Article IX.C); and (c) the Plan is declared effective.

49.     "*Effective Date Liquidity*" means the sum of (a) the estimated availability under the Exit First Lien Credit Facility as of the Effective Date, which shall be no less than $100 million unless mutually agreed upon by the Debtors and the Required Backstop Parties and (b) the aggregate of cash and cash equivalents of the Reorganized Debtors, calculated pro forma as of the Effective Date; *provided* that such pro forma calculations shall be made in good faith by the Debtors and reasonably acceptable to the Required Backstop Parties; *provided*, *further*, that pro forma adjustments to Effective Date Liquidity may include deductions of financial and business restructuring costs that have been realized or are reasonably expected to be realized within six months of the Effective Date, assuming a status quo operation of the Company (i.e., no acquisitions or divestitures).

50.     "*Equity Backstop Parties*" means those parties making an equity backstop commitment pursuant to the Backstop Commitment Agreement, each solely in its capacity as a provider of such equity backstop commitment.

51.     "*Equity Grant*" means (a) approximately $43.7 million in the form of New Common Stock, issued at a 20 percent discount to $1.275 billion total enterprise value, to be granted to the Equity Backstop Parties pursuant to the Backstop Commitment Agreement and (b) approximately $1.3 million in the form of New Common Stock,

issued at a 20 percent discount to $1.275 billion total enterprise value, to be granted to the Debt Backstop Parties pursuant to the Backstop Commitment Agreement.[2]

52.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

53.    "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

54.    "*Exculpated Claim*" means any Cause of Action or any Claim related to any act or omission derived from, based upon, related to, or arising from the Debtors' in or out-of-court restructuring efforts, the Chapter 11 Cases, the marketing process, formulation, preparation, dissemination, negotiation, or Filing of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan (including any term sheets related thereto), or any contract, instrument, release or other agreement or document (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with any of the foregoing, including without limitation (a) the Restructuring Support Agreement, (b) the issuance of the New Common Stock, (c) the Rights Offering, (d) the execution, delivery, and performance of the New Credit Facilities Documents, and (e) the distribution of property under the Plan or any other agreement under the Plan, except for Claims or Causes of Action related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence; *provided* that the Exculpated Parties shall be entitled, in all respects, to reasonably rely upon the advice of counsel with respect to the foregoing; *provided*, *further*, that the foregoing shall not be deemed to release, affect, or limit any of the rights and obligations of the Exculpated Parties from, or exculpate the Exculpated Parties with respect to, any of the Exculpated Parties' obligations or covenants arising under the Confirmation Order, the Plan, the Plan Supplement, the New Credit Facilities Documents, and any contracts, instruments, releases, and other agreements or documents delivered in connection with, or contemplated by, the foregoing.

55.    "*Exculpated Parties*" means each of:  (a) the Debtors; (b) the Reorganized Debtors; (c) the Sponsors; (d) the Consenting Lenders; (e) the Backstop Parties; (f) the Second Lien Agent; and (g) with respect to each of the foregoing Entities in clauses (a) through (f), such Entity's current and former affiliates, and such Entity's and such affiliates' current and former equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, each in their capacity as such; and (h) the DTC; *provided* that Exculpated Parties shall not include any of the Debtors' directors or officers before the 2011 Acquisition or the holders of Preferred Interests.

56.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

57.    "*Exit First Lien Credit Agreement*" means the credit agreement, to be dated as of the Effective Date, providing for the Exit First Lien Credit Facility.

58.    "*Exit First Lien Credit Facility*" means a reserve-based first lien revolving credit facility with aggregate principal availability of at least $750 million on the Effective Date and such other terms reasonably acceptable to the Debtors and the Required Backstop Parties, which may either be an amendment and restatement of the First Lien Credit Facility or a new facility.

---

[2]    The $45,000,000 Equity Grant assumes that the Accordion is not exercised.  In the event the Accordion is exercised, the Equity Grant shall be increased by an additional $3,500,000 of New Common Stock (issued at the Rights Equity Exercise Price).

59.    "*Exit First Lien Credit Facility Documents*" means, in connection with the Exit First Lien Credit Facility, the credit agreement and other loan documents, related to or evidencing the loans and obligations thereunder, to be dated as of the Effective Date, governing the Exit First Lien Credit Facility, each in form and substance reasonably acceptable to the Debtors and the Required Backstop Parties.

60.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

61.    "*Fee Claim*" means a Claim for Accrued Professional Compensation.

62.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent.

63.    "*Final Order*" means an order or judgment of the Court (or any other court of competent jurisdiction) entered by the Clerk of the Court (or any other court) on the docket in the Chapter 11 Cases (or the docket of such other court), which has not been reversed, stayed, modified, amended, or vacated, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have become final in accordance with rule 8002 of the Bankruptcy Rules; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

64.    "*First Lien Agent*" means JPMorgan Chase Bank, N.A., in its capacity as administrative and collateral agent under the First Lien Credit Agreement and the other First Lien Loan Documents.

65.    "*First Lien Claims*" means all Claims against the Debtors arising under the First Lien Loan Documents.

66.    "*First Lien Credit Agreement*" means that certain Credit Agreement, dated as of December 21, 2011, by and between Samson Investment Company, as borrower, the First Lien Agent, and the First Lien Lenders (as amended, restated, supplemented, or otherwise modified from time to time).

67.    "*First Lien Credit Facility*" means the credit facility under the First Lien Credit Agreement.

68.    "*First Lien Lenders*" means, collectively, the lenders from time to time party to the First Lien Credit Agreement.

69.    "*First Lien Loan Documents*" means the First Lien Credit Agreement and the other Credit Documents (as defined in the First Lien Credit Agreement), and any other document related to or evidencing the loans and obligations thereunder.

70.    "*General Unsecured Claim*" means any Claim against any Debtor that is not otherwise paid in full during the Chapter 11 Cases pursuant to an order of the Court and is not:  (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) an Other Secured Claim; (e) a First Lien Claim; (f) a Second Lien Secured Claim; (g) an Intercompany Claim; (h) a Section 510(b) Claim; or (i) a Convenience Claim; *provided* that any holder of a General Unsecured Claim in an Allowed amount greater than $[35,000], other than an Unsecured Debt Claim, may elect to have such Claim irrevocably reduced to $[35,000] and treated as a Convenience Claim for purposes of the Plan in full and final satisfaction of such Claim.

71.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

72.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

73.     "*Indemnification Obligations*" means each of the Debtors' indemnification obligations in place as of the Effective Date, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment contracts, for the current and former directors and the officers who served in such capacity at any time after or within the 12 months prior to the Petition Date and, *except* that the Indemnification Obligations shall not include any of the Debtors' indemnification obligations for any of the Debtors' directors or officers before the 2011 Acquisition or the holders of Preferred Interests.

74.     "*Intercompany Claim*" means any Claim held by one Debtor or a Non-Debtor Subsidiary against another Debtor.

75.     "*Intercompany Interest*" means, other than an Interest in Parent, (a) an Interest in one Debtor or Non-Debtor Subsidiary held by another Debtor or Non-Debtor Subsidiary or (b) an Interest in a Debtor or a Non-Debtor Subsidiary held by an Affiliate of a Debtor or a Non-Debtor Subsidiary.

76.     "*Intercreditor Agreement*" means that certain Second Lien Intercreditor Agreement, dated as of September 25, 2012, by and among JPMorgan Chase Bank, N.A., as First Lien Collateral Agent, Bank of America, N.A., as Second Lien Collateral Agent, Samson Investment Company, certain Debtors as grantors, and the other loan parties from time to time party thereto.

77.     "*Interests*" means the common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor and options, warrants, rights, or other securities or agreements to acquire the common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement), including any claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

78.     "*Interim Compensation Order*" means that certain order entered by the Court establishing procedures for the compensation of Professionals.

79.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

80.     "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

81.     "*Liquidity Calculation Date*" means no later than November 1, 2015, or such other date as agreed by the Debtors and the Required Backstop Parties.

82.     "*Majority Consenting Lenders*" means, as of any date of determination, Consenting Lenders holding a majority of the outstanding principal amount of the Second Lien Claims held by the Consenting Lenders in the aggregate.

83.     "*Management Incentive Plan*" means that certain post-Effective Date management and New Board incentive plan, the material terms of which shall be set forth in the Plan Supplement.

84.     "*New Boards*" means the initial board of directors, members, or managers, as applicable, of each Reorganized Debtor.

85.     "*New Common Stock*" means the common equity of Reorganized Parent, which may comprise or be converted to limited liability company interests in the event the Reorganized Parent is converted to a limited liability company, authorized and issued pursuant to the Plan.

86.    "*New Credit Facilities*" means the Exit First Lien Credit Facility and the New Second Lien Facility.

87.    "*New Credit Facilities Documents*" means the Exit First Lien Credit Facility Documents, the New Second Lien Loan Documents, and the New Intercreditor Agreement.

88.    "*New Intercreditor Agreement*" means the intercreditor agreement to be entered into between the agent under the Exit First Lien Credit Facility and the agent under the New Second Lien Facility.

89.    "*New Money Investment*" means the $450 million gross new money investment in the Reorganized Debtors to be funded pursuant to the Rights Offering and backstopped by the Backstop Parties, which may be increased to $485 million if the Accordion is required.

90.    "*New Organizational Documents*" means the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of each of the Reorganized Debtors, which forms shall be included in the Plan Supplement.

91.    "*New Second Lien Credit Agreement*" means the credit agreement, to be effective as of the Effective Date, providing for the New Second Lien Facility.

92.    "*New Second Lien Facility*" means the second lien term loan facility arising under the New Second Lien Loan Documents in the maximum aggregate principal amount of $125 million, which will be raised through the Rights Offering on the terms set forth in the Restructuring Support Agreement.

93.    "*New Second Lien Loan Documents*" means the New Second Lien Credit Agreement and the related guaranty agreements, security agreements, mortgages and other agreements and documents executed in connection therewith.

94.    "*Non-Debtor Subsidiaries*" means:  (a) Samson Financing Limited Partnership; (b) Samson Canada Holdings, ULC; (c) Samson Kelley Operating Company, Ltd.; (d) PYR Energy Corporation; (e) OSN Production Ltd.; (f) Cimarron Oil Field Supply LLC; and (g) SGH Enterprises, Inc.

95.    "*Notice and Claims Agent*" means Garden City Group, LLC.

96.    "*Ordinary Course Professionals*" shall mean the various attorneys, accountants, auditors, and other professionals the Debtors employ in the ordinary course of their business and retained by the Debtors pursuant to the Ordinary Course Professionals Order.

97.    "*Ordinary Course Professionals Order*" shall mean that certain order entered by the Court establishing the procedures for retaining the Ordinary Course Professionals.

98.    "*Other Priority Claim*" means any allowed Claim against any Debtor entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than:  (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases.

99.    "*Other Secured Claim*" means any Secured Claim against any Debtor that is not (a) a First Lien Claim, or (b) a Second Lien Claim.

100.    "*Parent*" means Samson Resources Corporation.

101.    "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

102.    "*Petition Date*" means September 16, 2015, the date on which the Debtors commenced the Chapter 11 Cases.

103. "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, each of which shall be in form and substance reasonably acceptable to the Debtors, the Sponsors (solely with respect to the Sponsor Consent Right), and the Required Backstop Parties (as amended, supplemented, or modified from time to time with the reasonable consent of the Required Backstop Parties and the Sponsors (solely with respect to the Sponsor Consent Right) in accordance with the terms hereof and the Bankruptcy Code and the Bankruptcy Rules), to be Filed by the Debtors no later than 10 days before the Voting Deadline, and additional documents or amendments to previously Filed documents, Filed before the Confirmation Date as amendments to the Plan Supplement, including the following, as applicable:  (a) New Organizational Documents; (b) Exit First Lien Credit Agreement; (c) New Second Lien Credit Agreement; (d) Schedule of Rejected Executory Contracts and Unexpired Leases; (e) a list of retained Causes of Action; (f) Management Incentive Plan; (g) a document listing the members of the New Boards; (h) the Stockholders Agreement; and (i) the New Intercreditor Agreement.  The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date with the reasonable consent of the Sponsors (solely with respect to the Sponsor Consent Right) and the Required Backstop Parties.

104. "*Priority Claims*" means Priority Tax Claims and Other Priority Claims.

105. "*Preferred Interests*" means the 180,000 shares of cumulative redeemable preferred stock of Parent issued in December 2011.

106. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

107. "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that respective Class, or the proportion that Allowed Claims or Allowed Interests in a particular Class bear to the aggregate amount of Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim or Allowed interests under the Plan.

108. "*Professional*" means an Entity employed pursuant to a Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

109. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

110. "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, the treatment provided for in section 1124 of the Bankruptcy Code.

111. "*Released Party*" means each of the following in their capacity as such:  (a) the First Lien Agent; (b) the First Lien Lenders; (c) the Second Lien Agent; (d) the Second Lien Lenders; (e) each of the Sponsors; (f) the Backstop Parties; (g) the Consenting Lenders; (h) the Non-Debtor Subsidiaries; and (i) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing Entities in clauses (a) through (h), such Entity's current and former affiliates and such Entity's and such affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors and assigns, subsidiaries, managed accounts or funds, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals; and (j) DTC; *provided* that the Released Parties shall not include the Debtors' directors or officers before the 2011 Acquisition or the holders of Preferred Interests.

112. "*Releasing Party*" means each of the following in their capacity as such:  (a) the First Lien Agent; (b) the First Lien Lenders; (c) the Second Lien Agent; (d) the Second Lien Lenders; (e) the Sponsors; (f) the Backstop Parties; (g) the Consenting Lenders; (h) all holders of Claims and Interests that are deemed to accept the Plan; (i) all holders of Claims and Interests who vote to accept the Plan; (j) all holders in voting Classes who abstain

from voting on the Plan <u>and</u> who do not opt out of the releases provided by the Plan; (k) all holders of Claims and Interests who vote to reject or are deemed to reject the Plan <u>and</u> who do not opt out of the releases provided by the Plan; and (l) with respect to each of the Debtors, the Reorganized Debtors, and each of the foregoing Entities in clauses (a) through (k), such Entities' current and former affiliates' and such Entities' and such affiliates' predecessors, successors and assigns, subsidiaries, managed accounts or funds, current and former directors, principals,  managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers consultants, representatives, management companies, fund advisors and other professionals.

113.    "*Reorganized Debtors*" means the Debtors, or any successors thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including any new entity formed pursuant to the Restructuring Transactions to directly or indirectly acquire the assets or equity of the Debtors.

114.    "*Reorganized Parent*" means Parent, or any successors thereto, by merger, consolidation, or otherwise, on and after the Effective Date, including any new holding company formed pursuant to the Restructuring Transactions to indirectly acquire the assets or equity of the Debtors.

115.    "*Required Backstop Parties*" means, as of any date of determination, Backstop Parties committed to providing a majority of the aggregate debt and equity backstop commitments pursuant to the Restructuring Support Agreement.

116.    "*Restructuring Support Agreement*" means the Restructuring Support Agreement, dated as of August 14, 2015, as amended, supplemented, or otherwise modified from time to time in accordance with its terms, a copy of which is attached as <u>Exhibit B</u> to the Disclosure Statement and included in the Plan Supplement.

117.    "*Restructuring Transactions*" shall have the meaning set forth in Article IV.A.

118.    "*Rights*" means the rights distributed to Rights Offering Participants to purchase Rights Offering Units at the applicable Rights Exercise Price, pursuant to the Rights Offering Procedures.

119.    "*Rights Debt Exercise Price*" means the purchase price per Rights Offering Debt Unit in connection with the Rights Offering, equal to $[1,000].

120.    "*Rights Equity Exercise Price*" means the purchase price per Rights Offering Equity Unit in connection with the Rights Offering, equal to $[____].

121.    "*Rights Exercise Price*" means the Rights Debt Exercise Price or Rights Equity Exercise Price, as applicable.

122.    "*Rights Offering*" means that certain offering of Rights to the Rights Offering Participants to (a) purchase a minimum of $325 million of New Common Stock outstanding on the Effective Date and (b) purchase interests in the New Second Lien Facility in the maximum aggregate principal amount of $125 million, to be conducted in accordance with the Rights Offering Procedures for an aggregate amount of $450,000,000 in the event the Accordion is not exercised, and for an aggregate amount of no more than $485,000,000 in the event the Accordion is exercised.

123.    "*Rights Offering Debt Unit*" means $1,000 in principal amount of the New Second Lien Facility offered for sale in connection with the Rights Offering.

124.    "*Rights Offering Documents*" means, collectively, all related agreements, documents, or instruments in connection with the Rights Offering and the Backstop Commitment Agreement, the forms of which shall be included in the Plan Supplement, and shall be reasonably satisfactory in all respects to the Debtors, the Majority Consenting Lenders, the Required Backstop Parties, and, consistent with the Sponsor Consent Right, the Sponsors.

125.     "*Rights Offering Equity Unit*" means one share of the New Common Stock offered for sale in connection with the Rights Offering.

126.     "*Rights Offering Participants*" means those holders of Second Lien Claims as of the Voting Record Date or Backstop Parties that are entitled to purchase Rights Offering Units pursuant to the Rights Offering Documents.

127.     "*Rights Offering Procedures*" means the procedures governing the Rights Offering, which are included as <u>Exhibit 2</u> to <u>Exhibit A</u> to the *Debtors' Motion  to Approve (I) Adequacy of the Disclosure Statement, (II) Solicitation and Notice Procedures, (III) Rights Offering Procedures, (IV) Forms of Ballots and Notices in Connection Therewith, and (V) Certain Dates with Respect Thereto*, as such procedures may be amended, modified, or supplemented with the consent of the Debtors and the Required Backstop Parties.

128.     "*Rights Offering Unit*" means a Rights Offering Debt Unit or a Rights Offering Equity Unit, as applicable.

129.     "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule in form and substance reasonably acceptable to the Debtors and the Required Backstop Parties (including any amendments or modifications thereto), if any, of certain Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtors from time to time prior to the Confirmation Date with the reasonable consent of the Required Backstop Parties.

130.     "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

131.     "*Second Lien Agent*" means Deutsche Bank Trust Company Americas, in its capacity as successor administrative and collateral agent under the Second Lien Credit Agreement and the other Second Lien Loan Documents.

132.     "*Second Lien Claims*" means all Claims against the Debtors arising under the Second Lien Loan Documents allowed in the amount set forth in Article III.C.

133.     "*Second Lien Credit Agreement*" means that certain Credit Agreement, dated as of September 25, 2012, by and between Samson Investment Company, as borrower, the Second Lien Agent, and the Second Lien Lenders (as amended, restated, supplemented, or otherwise modified from time to time).

134.     "*Second Lien Deficiency Claim*" means the portion of the Second Lien Claim constituting a general unsecured claim under section 506(a) of the Bankruptcy Code.  The Second Lien Deficiency Claim shall be Allowed in an amount:  (a) stipulated by the Debtors and the Second Lien Agent and approved by the Court, which approval may be set forth in the Plan or Confirmation Order; or (b) otherwise determined by the Court, including in connection with Confirmation, after notice and an opportunity for a hearing.

135.     "*Second Lien Lender*s" means, collectively, the lenders from time to time party to the Second Lien Credit Agreement.

136.     "*Second Lien Loan Documents*" means the Second Lien Credit Agreement and the other Loan Documents (as defined in the Second Lien Credit Agreement), and any other document related to or evidencing the loans and obligations thereunder.

137.     "*Second Lien Secured Claim*" means any Second Lien Claim that is Secured.

138.    "*Section 510(b) Claims*" means any Claims arising from (a) rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors, (b) purchase or sale of such a security or (c) reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

139.    "*Secured*" means when referring to a Claim, a Claim:  (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

140.    "*Secured Tax Claims*" means any Secured Claim against any Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

141.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, or any similar federal, state or local law.

142.    "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as amended.

143.    "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

144.    "*Senior Notes*" means the 9.750 percent Senior Notes Due 2020, issued in the original principal amount of $2,250,000,000 pursuant to the Senior Notes Indenture.

145.    "*Senior Notes Claims*" means all Claims against the Debtors arising under the Senior Notes Indenture.

146.    "*Senior Notes Indenture*" means that certain Indenture, dated as of February 8, 2012, between Samson Investment Company, as issuer, certain of the Debtors as guarantors, and the Senior Notes Indenture Trustee (as amended, restated, supplemented, or otherwise modified from time to time), providing for the issuance of 9.750 percent Senior Notes Due 2020.

147.    "*Senior Notes Indenture Trustee*" means Wells Fargo Bank, National Association, solely in its capacity as indenture trustee under the Senior Notes Indenture.

148.    "*Sponsor Consent Right*" means a Sponsor's right to consent to or approve any documents, actions, or agreements, as applicable, solely with respect to any terms thereof that affect the implementation of or alter the releases granted or received by each Sponsor or its respective predecessors, successors and assigns, subsidiaries, affiliates, managed accounts or funds, and each of such entities' respective current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals pursuant to the Restructuring Support Agreement.

149.    "*Sponsors*" means:  (a) Crestview Advisors, L.L.C.; (b) Crestview Offshore Holdings II (892 Cayman), L.P.; (c) Crestview Offshore Holdings II (Cayman), L.P.; (d) Crestview Offshore Holdings II (FF Cayman), L.P.; (e) Crestview Partners (Cayman), LTD.; (f) Crestview Partners II (892 Cayman), L.P.; (g) Crestview Partners II (Cayman), L.P.; (h) Crestview Partners II (FF Cayman), L.P.; (i) Crestview Partners II (FF), L.P.; (j) Crestview Partners II (TE), L.P.; (k) Crestview Partners II CWGS (Cayman), L.P.; (l) Crestview Partners II CWGS (FF Cayman), L.P.; (m) Crestview Partners II GP, L.P.; (n) Crestview Partners II, L.P.; (o) Crestview Tulip Credit, LLC; (p) Crestview Tulip Holdings LLC; (q) Crestview Tulip Investors LLC; (r) Crestview, L.L.C.; (s) Kohlberg Kravis Roberts & Co. L.P.; (t) KKR 2006 Fund, L.P.; (u) KKR Samson Investors L.P.; (v) KKR Samson Investors GP LLC; (w) KKR 2006 Fund (Samson) L.P.; (x) KKR Samson SA Blocker L.P.; (y) KKR Fund Holdings L.P.; (z)

KKR Partners III, L.P.; (aa) Operf Co-Investment LLC; (bb) Samson Aggregator GP LLC; (cc) Samson Aggregator L.P.; (dd) Samson Co-Invest I L.P.; (ee) Samson Co-Invest II L.P.; and (ff) Samson Co-Invest III L.P.

150.    "*Stockholders Agreement*" means one or more stockholders agreement(s) or limited liability company membership agreement(s), as applicable, with respect to the New Common Stock, substantially in the form to be included in the Plan Supplement and in form and substance acceptable to the Debtors and the Backstop Parties.

151.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

152.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

153.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in cash.

154.    "*Unsecured Debt Claims*" means the Senior Notes Claims and the Second Lien Deficiency Claims, which, for the avoidance of doubt, shall constitute General Unsecured Claims in Class 5.

155.    "*Voting Deadline*" means [November 20], 2015 at 4:00 p.m., prevailing Eastern Time.

B.    *Rules of Interpretation*

For purposes herein:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) except as otherwise provided, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) except as otherwise provided, any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the terms of the Plan; (4) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan or hereto; (5) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (6) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (8) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (9) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (10) any docket number references in the Plan shall refer to the docket number of any document Filed with the Court in the Chapter 11 Cases.

C.    *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.    *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control);

*provided* that corporate or limited liability company governance matters relating to the Debtors or the Reorganized Debtors, as applicable, not incorporated or formed (as applicable) in New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Reorganized Debtor.

E.       *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.       *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.       *Controlling Document*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.       *Administrative Claims*

Except with respect to Administrative Claims that are Fee Claims and except to the extent that an Administrative Claim has already been paid during the Chapter 11 Cases or a holder of an Allowed Administrative Claim and the applicable Debtor(s) agree to less favorable treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the unpaid portion of its Allowed Administrative Claim on the latest of:  (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed; and (c) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtors' businesses shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

Except as otherwise provided in this Article II.A and except with respect to Administrative Claims that are Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Reorganized Debtors and the requesting party no later than 60 days after the Effective Date.

B.      *Professional Compensation*

      1.      <u>Final Fee Applications and Payment of Fee Claims.</u>

All final requests for payment of Fee Claims incurred during the period from the Petition Date through the Confirmation Date, shall be Filed no later than 30 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules and prior Court orders, the Allowed amounts of such Fee Claims shall be determined by the Court.  The amount of Fee Claims owing to the Professionals shall be paid in Cash to such Professionals when such Claims are Allowed by a Final Order.

      2.      <u>Post-Confirmation Date Fees and Expenses.</u>

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or the Committee.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.      *Priority Tax Claims*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.  In the event an Allowed Priority Tax Claim is also a Secured Tax Claim, such Claim shall, to the extent it is Allowed, be treated as an Other Secured Claim if such Claim is not otherwise paid in full.

D.      *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.      *Summary of Classification*

Claims and Interests, except for Administrative Claims, Fee Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

Except as provided below, the Plan constitutes a separate chapter 11 plan of reorganization for each Debtor and the classifications set forth in Classes 1 through 9 shall be deemed to apply to each Debtor, except for Class 10, which only applies to Parent.  If substantive consolidation is ordered pursuant to Article IV.Q of the Plan, each Class

with respect to the Debtors shall vote as set forth in Article III of the Plan. If substantive consolidation is not ordered, each Class of Claims against or Interests in the Debtors shall be deemed to constitute separate sub-Classes of Claims against and Interests in each of the Debtors, as applicable, and each such sub-Class shall vote as a single separate Class for each of the Debtors, as applicable, and the confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to each of the Debtors.

   1. <u>Class Identification</u>

     The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | First Lien Claims | Impaired | Entitled to Vote |
| 4 | Second Lien Secured Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Convenience Claims | Impaired | Entitled to Vote |
| 7 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Claims | Unimpaired/Impaired | Not Entitled to Vote (Presumed to Accept/Deemed to Reject) |
| 9 | Intercompany Interests | Unimpaired/Impaired | Not Entitled to Vote (Presumed to Accept/Deemed to Reject) |
| 10 | Interests in Parent | Impaired | Not Entitled to Vote (Deemed to Reject) |

B. *Treatment of Claims and Interests*

   1. <u>Class 1 – Other Priority Claims</u>

     a. *Classification*:  Class 1 consists of Other Priority Claims.

     b. *Treatment*:  Except to the extent that a holder of an Allowed Other Priority Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Priority Claim, each such holder shall receive payment in full, in cash, of the unpaid portion of its Other Priority Claim on the Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, shall be paid in accordance with its terms) or pursuant to such other terms as may be agreed to by the holder of an Other Priority Claim and the Debtors.

     c. *Voting*:  Class 1 is Unimpaired under the Plan.  Each holder of an Other Priority Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each holder of an Other Priority Claim will not be entitled to vote to accept or reject the Plan.

   2. <u>Class 2 – Other Secured Claims</u>

     a. *Classification*:  Class 2 consists of Other Secured Claims.

     b. *Treatment*:  On the Effective Date, except to the extent that a holder of an Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Other Secured Claim, each such holder shall receive either (i) payment in full in cash of the unpaid portion of its

Other Secured Claim on the Effective Date or as soon thereafter as reasonably practicable (or if payment is not then due, shall be paid in accordance with its terms), (ii) reinstatement pursuant to section 1124 of the Bankruptcy Code, or (iii) such other recovery necessary to satisfy section 1129 of the Bankruptcy Code.

c.    *Voting*:  Class 2 is Unimpaired under the Plan.  Each holder of an Other Secured Claim will be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each holder of an Other Secured Claim will not be entitled to vote to accept or reject the Plan.

3.    <u>Class 3 - First Lien Claims</u>

a.    *Classification*:  Class 3 consists of all First Lien Claims.

b.    *Allowance*:  The First Lien Claims shall be Allowed in the aggregate amount equal to $[941,594,586.37] million plus accrued and unpaid interest and reasonable and documented expenses payable pursuant to the First Lien Loan Documents; *provided* that such amount shall be reduced by valid setoffs, including per hedging arrangements under the First Lien Loan Documents.

c.    *Treatment*:  On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of a First Lien Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed First Lien Claim, each holder of a First Lien Claim shall receive:

(i)    If the First Lien Credit Facility is refinanced through a new Exit First Lien Credit Facility, payment in full of such holder's First Lien Claim in Cash; or

(ii)    If the First Lien Credit Facility is amended and restated by the Exit First Lien Credit Facility, such holder shall receive a distribution of Cash and loans arising under the Exit First Lien Credit Facility having an aggregate value equal to such holder's First Lien Claim.

d.    *Voting*:  Class 3 is Impaired under the Plan.  Each holder of a First Lien Claim will be will be entitled to vote to accept or reject the Plan.

4.    <u>Class 4 - Second Lien Secured Claims</u>

a.    *Classification*:  Class 4 consists of all Second Lien Secured Claims.

b.    *Treatment*:  On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of a Second Lien Secured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Second Lien Secured Claim, each holder of a Second Lien Secured Claim shall receive its Pro Rata share of (a) (x) [___] percent[3] of the New Common Stock, if Class 5 votes to reject the Plan by the Voting Deadline or (y) [___] percent of the New Common Stock, if Class 5 votes to accept the Plan by the Voting Deadline, in each case, subject to dilution for the Management Incentive Plan, and (b) the

---

[3]    The amount of New Common Stock issued to holders of Second Lien Secured Claims pursuant to clauses (x) and (y) of this Article III.B.4 (a) is variable, (b) will depend on factors, including the Rights Offering subscription, more fully set forth in the Disclosure Statement and (c) will be determined and disclosed by the Debtors before the Confirmation Hearing.

Rights to purchase its Pro Rata share of the Rights Offering Units (subject to the sale of the Backstop Holdback Equity).

    c.    *Voting*: Class 4 is Impaired under the Plan. Each holder of a Second Lien Secured Claim will be entitled to vote to accept or reject the Plan.

5.    <u>Class 5 - General Unsecured Claims</u>

    a.    *Classification*: Class 5 consists of all General Unsecured Claims.

    b.    *Treatment*: On the Effective Date, or as soon thereafter as reasonably practicable, except to the extent that a holder of a General Unsecured Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each holder of a General Unsecured Claim shall receive its Pro Rata share of either (i) if the class of General Unsecured Claims votes to accept the Plan by the Voting Deadline, 1.0 percent of New Common Stock (subject to dilution for the Management Incentive Plan), or (ii) if the class of General Unsecured Claims votes to reject the Plan by the Voting Deadline, 0.5 percent of the New Common Stock (subject to dilution for the Management Incentive Plan). For the avoidance of doubt, Class 5 shall not include any Claim that would otherwise be a General Unsecured Claim if the holder of such Claim has elected to have such Claim treated as a Convenience Claim.

    c.    *Voting*: Class 5 is Impaired under the Plan. Each holder of a General Unsecured Claim will be entitled to vote to accept or reject the Plan.

6.    <u>Class 6 - Convenience Claims</u>

    a.    *Classification*: Class 6 consists of all Convenience Claims.

    b.    *Treatment*: On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a holder of an Allowed Convenience Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for each Allowed Convenience Claim, each holder of a Convenience Claim shall receive, subject to applicable law, Cash in an amount equal to its pro rata share of $[1,000,000] <u>less</u> the costs of administering such distributions.

    c.    *Voting*: Class 6 is Impaired under the Plan. Each holder of a Convenience Claim will be entitled to vote to accept or reject the Plan.

7.    <u>Class 7 - Section 510(b) Claims</u>

    a.    *Classification*: Class 7 consists of all Section 510(b) Claims.

    b.    *Treatment*: On the Effective Date, each Section 510(b) Claim shall be cancelled without any distribution and such holders of Section 510(b) Claims will receive no recovery.

    c.    *Voting*: Class 7 is Impaired under the Plan. Each holder of a 510(b) Claim will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, each holder of a 510(b) Claim will not be entitled to vote to accept or reject the Plan.

8.    <u>Class 8 - Intercompany Claims</u>

a.    *Classification*:  Class 8 consists of all Intercompany Claims.

b.    *Treatment*: Intercompany Claims may be Reinstated as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, with the consent of the Required Backstop Parties, be cancelled, and no distribution shall be made on account of such Claims.

c.    *Voting*:  Holders of Intercompany Claims are either Unimpaired, and such holders of Intercompany Claims conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and such holders of Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Intercompany Claim will not be entitled to vote to accept or reject the Plan.

9.    <u>Class 9 - Intercompany Interests</u>

a.    *Classification*:  Class 9 consists of all Intercompany Interests.

b.    *Treatment*:  Intercompany Interests may be Reinstated as of the Effective Date or, at the Debtors' or the Reorganized Debtors' option, with the consent of the Required Backstop Parties, be cancelled, and no distribution shall be made on account of such Interests.

c.    *Voting*:  Holders of Intercompany Interests are either Unimpaired, and such holders of Intercompany Interests conclusively are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and such holders of Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Intercompany Interest will not be entitled to vote to accept or reject the Plan.

10.    <u>Class 10 - Interests in Parent</u>

a.    *Classification*:  Class 10 consists of all Interests in the Parent.

b.    *Treatment*:   On the Effective Date, existing Interests in the Parent shall be deemed canceled and extinguished, and shall be of no further force and effect, whether surrendered for cancelation or otherwise, and there shall be no distribution to holders of Interests in the Parent on account of such Interests.

c.    *Voting*:  Class 10 is Impaired under the Plan.  Each holder of an Interest in Parent will be conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, each holder of an Interest in the Parent will not be entitled to vote to accept or reject the Plan.

C.    *Allowance of Certain Claims*

The Second Lien Claims, including the Second Lien Secured Claims and the Second Lien Deficiency Claims, shall be Allowed in the aggregate principal amount of $1,000,000,000, plus any accrued but unpaid interest payable thereon, as calculated in accordance with the Second Lien Credit Agreement (estimated to be $[11,527,778] as of September 15, 2015).  The Second Lien Deficiency Claim shall be Allowed in the amount of $[_____].

D.    *Special Provision Governing Unimpaired Claims*

Nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

E.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

The Debtors reserve the right to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.

F.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

G.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the holders of such Claims or Interests in such Class.

H.      *Presumed Acceptance and Rejection of the Plan*

To the extent Class 8 Intercompany Claims and Class 9 Intercompany Interests are cancelled, each holder of a Claim or Interest in Class 8 or 9 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.  To the extent Class 8 Intercompany Claims and Class 9 Intercompany Interests are Reinstated, each holder of a Claim or Interest in Class 8 or 9 is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

I.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of the holders of New Common Stock, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the holders of Allowed Claims.  For the avoidance of doubt, any Interest in Non-Debtor Subsidiaries owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor.

J.      *Subordinated Claims*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise, including, without limitation, the Intercreditor Agreement. Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**ARTICLE IV.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      *Restructuring Transactions*

On the Effective Date, or as soon as reasonably practicable thereafter, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Support Agreement and the Plan (the "Restructuring Transactions"), including:   (1) the execution and delivery of any appropriate agreements or other documents of merger,

consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (4) if implemented pursuant to the Plan, all transactions necessary to provide for the purchase of substantially all of the assets or Interests of any of the Debtors, which purchase may be structured as a taxable transaction for United States federal income tax purposes; (5) the execution and delivery of the New Credit Facilities Documents; and (6) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

B.      *Sources of Consideration for Plan Distributions*

The Reorganized Debtors shall fund distributions under the Plan as follows:

1.      <u>Issuance and Distribution of New Common Stock</u>

The issuance of the New Common Stock, including options, or other equity awards, if any, reserved under the Management Incentive Plan, shall be authorized without the need for any further corporate action and without any further action by the holders of Claims or Interests.

All of the shares of New Common Stock issued pursuant to the Plan, including the New Common Stock representing the Backstop Holdback Equity and the Equity Grant, shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

2.      <u>New Credit Facilities</u>

On the Effective Date the Reorganized Debtors shall enter into the New Credit Facilities.

The terms of the Exit First Lien Credit Facility will be set forth in the Exit First Lien Credit Facility Documents, and will include, among other terms, a borrowing base of at least $750 million on the Effective Date, shall have a five-year term, initial borrowings on the Effective Date in an amount not to exceed $650 million, and unused availability on the Effective Date of not less than $100 million, each of the foregoing unless otherwise agreed by the Debtors, the Required Backstop Parties, and the Majority Consenting Lenders, and other terms reasonably acceptable to the Debtors and the Required Backstop Parties.

The terms of the New Second Lien Facility will be set forth in the New Second Lien Loan Documents, and will include, among other terms, that the obligations under the New Second Lien Loan Documents shall be secured by second-priority liens and security interests in the collateral securing the Exit First Lien Credit Facility; shall have a maximum principal amount outstanding equal to the lesser of the amount of New Second Lien Facility subscribed for under the Rights Offering and $125 million; shall have a five-year term; shall bear interest (payable in Cash on a quarterly basis) at 8.5 percent per annum for the first 12 months following the Effective Date, and the interest rate shall increase by 50 basis points on the 12-month anniversary of the Effective Date and each six-month anniversary thereafter; shall not be subject to any prepayment penalty for voluntary prepayments on or prior to the first anniversary of the closing or after the third anniversary of the closing, but shall be subject to a 2.0-percent and 1.0-percent prepayment premium for voluntary prepayments during the 12-month period on or before the second and third anniversaries of the closing date, respectively; and shall include a cash funding fee under the New Second Lien Credit Agreement equal to 2.0 percent of the aggregate principal amount of New Second Lien Facility.

Confirmation shall be deemed approval of the New Credit Facilities (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees

paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not approved by the Court previously, and the Reorganized Debtors are authorized to execute and deliver those documents necessary or appropriate to obtain the New Credit Facilities, including the New Credit Facilities Documents, without further notice to or order of the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate the New Credit Facilities.

       3.    <u>Rights Offering</u>

The Plan provides that $450,000,000 will be raised through the Rights Offering, provided that solely in the event that the Reorganized Debtors' Effective Date Liquidity is projected on the Liquidity Calculation Date to be less than $350,000,000, the Rights Offering shall be expanded to include the Accordion. The Accordion shall be funded by the Rights Offering Participants in the same ratio of Rights Offering Debt Units and Rights Offering Equity Units applicable to the other Rights Offering Debt Units and Rights Offering Equity Units funded pursuant to the Rights Offering. On the Effective Date, the Reorganized Debtors shall consummate the Rights Offering, through which each Rights Offering Participant shall have the opportunity, subject to the terms and conditions set forth in the Plan and the Rights Offering Procedures, to purchase the Rights Offering Units pursuant to the Rights Offering Documents. The Backstop Parties will backstop the New Money Investment in accordance with the terms and conditions of the Backstop Commitment Agreement.

C.    *Corporate Existence*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, each Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise (including in connection with any conversion of the Reorganized Parent to a limited liability company), and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

D.    *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Restructuring Support Agreement or the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors, including Interests held by the Debtors in non-Debtor subsidiaries, pursuant to the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

E.    *Cancellation of Existing Securities*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date: (1) the obligations of the Debtors under the First Lien Credit Agreement, the Second Lien Credit Agreement, the Senior Notes Indenture, and any other certificate, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document, directly or indirectly, evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and the Reorganized Debtors shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or

certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligations of the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged; *provided* that notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the holder of a Claim or Interest shall continue in effect solely for purposes of enabling holders of Allowed Claims and Allowed Interests to receive distributions under the Plan as provided herein; *provided, further*, that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan or result in any expense or liability to the Reorganized Debtors, except to the extent set forth in or provided for under this Plan; *provided, further*, that nothing in this section shall effect a cancellation of any New Common Stock or Intercompany Interests.  Notwithstanding the foregoing, the Second Lien Loan Documents shall continue in effect solely with respect to any obligations thereunder governing the relationship between the Second Lien Lenders and the Second Lien Agent (including, but not limited to, those provisions relating to the Second Lien Agents' rights to expense reimbursement, indemnification, and similar amounts) or that may survive the termination or maturity of the Second Lien Credit Agreement in accordance with the terms thereof.

On and after the Effective Date, all duties and responsibilities of the First Lien Agent under the First Lien Credit Agreement, Second Lien Agent under the Second Lien Credit Agreement, and the Senior Notes Indenture Trustee under the Senior Notes Indenture, as applicable, shall be discharged unless otherwise specifically set forth in or provided for under the Plan or the Plan Supplement.

If the record holder of the Senior Notes is DTC or its nominee or another securities depository or custodian thereof, and such Senior Notes are represented by a global security held by or on behalf of DTC or such other securities depository or custodian, then each such holder of the Senior Notes shall be deemed to have surrendered such holder's note, debenture or other evidence of indebtedness upon surrender of such global security by DTC or such other securities depository or custodian thereof.

F.      *Corporate Action*

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Court in all respects, including, as applicable:  (1) entry into the Backstop Commitment Agreement; (2) the issuance of the New Common Stock; (3) the Rights Offering; (4) selection of the directors and officers for Reorganized Parent and the other Reorganized Debtors; (5) execution and delivery of the New Credit Facilities Documents; (6) adoption of the Management Incentive Plan by the New Board of the Reorganized Parent; (7) implementation of the Restructuring Transactions; and (8) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of Reorganized Parent and the other Reorganized Debtors, and any corporate action required by the Debtors, Reorganized Parent, or the other Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtors, Reorganized Parent or the other Reorganized Debtors.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtors, Reorganized Parent, or the other Reorganized Debtors shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of Reorganized Parent and the other Reorganized Debtors, including the Exit First Lien Credit Facility Documents and the New Second Lien Loan Documents, the Equity Grant, the Backstop Holdback Equity, the Backstop Transaction Fee, and the Backstop Expense Reimbursement, and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Court.  The authorizations and approvals contemplated by this Article IV.F shall be effective notwithstanding any requirements under non-bankruptcy law.

G.      *New Organizational Documents*

To the extent required under the Plan or applicable nonbankruptcy law, Reorganized Parent and the other Reorganized Debtors will file their respective New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in their respective states, provinces, or countries of incorporation in accordance with the corporate laws of the respective states, provinces, or countries of incorporation.  Pursuant to

section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents of the Reorganized Debtors will prohibit the issuance of non-voting equity securities. After the Effective Date, Reorganized Parent and the other Reorganized Debtors, as applicable, may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective states, provinces, or countries of incorporation and their respective New Organizational Documents.

H.      *Directors and Officers of the Reorganized Debtors*

As of the Effective Date, the term of the current members of the board of directors of the Debtors shall expire, and the initial boards of directors, including the New Boards, as well as the officers of each of the Reorganized Debtors, shall be appointed in accordance with the New Organizational Documents and other constituent documents of each Reorganized Debtor. The initial New Board of Reorganized Parent shall consist of those individuals disclosed prior to the Confirmation Hearing. Successors will be elected in accordance with the New Organizational Documents of Reorganized Parent.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will, to the extent practicable, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the initial New Boards, as well as those Persons that will serve as an officer of Reorganized Parent or any of the Reorganized Debtors. To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents and other constituent documents of Reorganized Parent and the Reorganized Debtors.

I.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, Reorganized Parent, the Reorganized Debtors, and the officers and members of the New Boards thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New Common Stock, in the name of and on behalf of Reorganized Parent or the Reorganized Debtors, without the need for any approvals, authorization, or consents except those expressly required pursuant to the Plan.

J.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

K.      *Preservation of Causes of Action*

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII and Article IV.L hereof, and as otherwise set forth in the Restructuring Support Agreement, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against it. The Debtors or the Reorganized Debtors, as applicable, expressly**

25

**reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Restructuring Support Agreement or the Plan or a Court order, the Debtors or Reorganized Debtors, as applicable, expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.  The applicable Reorganized Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Court.

L.    *Release of Avoidance Actions*

On the Effective Date, and except to the extent otherwise reserved in the Plan Supplement, the Debtors, on behalf of themselves and their estates, shall release any and all Avoidance Actions and the Debtors and the Reorganized Debtors, and any of their successors or assigns and any Entity acting on behalf of the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions; *provided* that unless otherwise released pursuant to the Restructuring Support Agreement or the Plan, the Debtors shall not release any Avoidance Actions arising out of or related to the 2011 Acquisition.  No Avoidance Actions shall revert to creditors of the Debtors.

M.    *Director and Officer Liability Insurance*

To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Reorganized Debtors shall be deemed to have assumed all unexpired D&O Liability Insurance Policies with respect to the Debtors' directors, managers, officers, and employees serving on or prior to the Petition Date pursuant to section 365(a) of the Bankruptcy Code.  Entry of the Confirmation Order will constitute the Court's approval of the Reorganized Debtors' assumption of each of the unexpired D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained in the Plan, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors under the Plan as to which no Proof of Claim need be filed.

Before the Petition Date, the Debtors obtained reasonably sufficient tail coverage (i.e., director, manager, and officer insurance coverage that extends beyond the end of the policy period) under a D&O Liability Insurance Policy for the current and former directors, officers, and managers.  After the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Liability Insurance Policy (including such tail coverage liability insurance) in effect and all members, managers, directors, and officers of the Debtors who served in such capacity at any time prior to the Effective Date of the Plan shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such members, managers, directors, and/or officers remain in such positions after the Effective Date of the Plan.

N.    *Management Incentive Plan*

On the Effective Date, equity grants equal to 10 percent of the New Common Stock (on a fully diluted basis) shall be reserved for continuing directors, officers, and employees of the Reorganized Debtors, on terms to be negotiated with certain material terms included in the Plan Supplement.  On or as soon after the Effective Date as is reasonably practicable, five percent of the New Common Stock will be preliminarily granted to Management Incentive Plan participants, which grants shall be subject to ratification by the New Board of the Reorganized

Parent.  The form and timing of additional Management Incentive Plan grants, if any, will be determined by the compensation committee of the New Board of the Reorganized Parent.

O.    *Employee and Retiree Benefits*

Unless otherwise set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases included in the Plan Supplement, which schedule is subject to the reasonable consent of the Required Backstop Parties, all employment, severance, retirement, indemnification, and other similar employee-related agreements or arrangements in place as of the Effective Date with the Debtors' and the Non-Debtor Subsidiaries', including retirement income plans and welfare benefit plans, or discretionary bonus plans or variable incentive plans regarding payment of a percentage of annual salary based on performance goals and financial targets for certain employees, shall be assumed by the Reorganized Debtors and shall remain in place after the Effective Date, as may be amended by agreement between the beneficiaries of such agreements, plans, or arrangements, on the one hand, and the Debtors, on the other hand, or, after the Effective Date, by agreement with the Reorganized Debtors, and the Reorganized Debtors will continue to honor such agreements, arrangements, policies, programs, and plans; *provided* that the foregoing shall not apply to any equity-based compensation, agreement, or arrangement existing as of the Effective Date.  Nothing in the Plan shall limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to any such contracts, agreements, policies, programs, and plans.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

P.    *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors or any party administering the Claims shall have the sole authority:  (1) to File, withdraw or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court.

Q.    *No Substantive Consolidation*

The Plan shall serve as a motion by the Debtors seeking entry of an order substantively consolidating each of the Estates of the Debtors into a single consolidated Estate solely for the limited purposes of voting, Confirmation, and distribution.  For the avoidance of doubt, the Plan shall not serve as a motion by the Debtors seeking entry of an order substantively consolidating the Debtors for any other purposes.  Notwithstanding anything in this Article IV.Q of the Plan, all distributions under the Plan shall be made in accordance with Article VI of the Plan.

If the Debtors' estates are substantively consolidated in accordance with this Article IV.Q, then, on and after the Effective Date, all assets and liabilities (including Allowed Claims) of the Debtors shall be treated as though they were merged into one Estate solely for purposes of voting, Confirmation, and distribution.  The limited substantive consolidation described herein shall not affect the legal and organizational structure of the Debtors, the Reorganized Debtors, or their separate corporate existences or any prepetition or postpetition guarantees, Liens, or security interests that are required to be maintained under the Bankruptcy Code, under the Plan, or, with respect to Executory Contracts or Unexpired Leases that were assumed or entered into during the Chapter 11 Cases.  **Moreover, any alleged defaults under any applicable agreement with the Debtors, the Reorganized Debtors, or their respective Affiliates arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.**

If the Debtors' Estates are not substantively consolidated in accordance with this Section, then (1) the Plan shall be deemed to constitute a separate sub-plan for each of the Debtors and each Class of Claims against or Interests in the Debtors shall be deemed to constitute separate sub-Classes of Claims against and Interests in each of the Debtors, as applicable, (2) the confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied separately with respect to each sub-plan, (3) any Claim against any of the Debtors shall be treated as a

Claim only against the applicable Debtor, as applicable, for purposes of voting and Confirmation, (4) such Claims shall be administered as provided in the Plan, and (5) the Debtors shall not, nor shall they be required to, resolicit votes with respect to the Plan, nor will the failure of the Court to approve limited substantive consolidation of the Debtors alter the distributions set forth in the Plan.

Notwithstanding the substantive consolidation provided for herein, nothing shall affect the obligation of each and every Debtor to pay the quarterly fees to the U.S. Trustee until such time as a particular Chapter 11 Case is closed, dismissed, or converted.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases will be deemed assumed and assigned to the Reorganized Debtors in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than:  (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have been previously rejected by a Final Order; (3) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

Entry of the Confirmation Order shall constitute a Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Court authorizing and providing for its assumption under applicable federal law.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Court on or after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be filed with the Court within thirty (30) days after the date of entry of an order of the Court (including the Confirmation Order) approving such rejection.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, the Reorganized Debtors, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the Reorganized Debtors, as applicable, or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III.B.5 of the Plan, as applicable.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an Executory Contract or Unexpired Lease, as reflected on the Cure Notice shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Reorganized

Debtors or any assignee, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption.

At least 14 days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption and proposed amounts of Cure Claims to the applicable third parties. Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served and actually received by the Debtors at least seven (7) days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have assented to such assumption or cure amount. Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is removed from the Schedule of Rejected Executory Contracts and Unexpired Leases after such 14-day deadline, a Cure Notice of proposed assumption and proposed amounts of Cure Claims with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof and a noticed hearing set to consider whether such Executory Contract or Unexpired Lease can be assumed.

In any case, if the Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, will have the right to add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired Leases, subject to the reasonable consent of the Required Backstop Parties, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Court.

D.    *Indemnification Obligations*

The Debtors and Reorganized Debtors shall assume the Indemnification Obligations for the current and former directors and the officers who served as in such capacity at any time after or within the 12 months prior to the Petition Date, in their capacities as such, and such Indemnification Obligations shall not be modified, reduced, discharged, impaired, or otherwise affected in any way. Notwithstanding the foregoing, nothing shall impair the ability of Reorganized Debtors to modify indemnification obligations (whether in the bylaws, certificates or incorporate or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) arising after the Effective Date; *provided* that none of the Reorganized Debtors shall amend and/or restate any New Organizational Documents before or after the Effective Date to terminate or adversely affect any of the Reorganized Debtors' Indemnification Obligations; *provided*, *further*, that neither the Debtors nor the Reorganized Debtors shall assume any of the Indemnification Obligations for any of the Debtors' directors or officers before the 2011 Acquisition or the holders of Preferred Interests.

E.    *Insurance Policies*

Without limiting Article IV.M, all of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments related thereto.

F.      *Restructuring Support Agreement*

The Restructuring Support Agreement is treated as and deemed to be an Executory Contract under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed the Restructuring Support Agreement and shall have cured any defaults thereunder prior to the Effective Date, unless otherwise waived by the requisite Consenting Lenders and/or requisite Backstop Parties and/or the Sponsors (solely with respect to the Sponsor Consent Right) under the Restructuring Support Agreement, as applicable.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, the Reorganized Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

J.      *Contracts and Leases Entered into After the Effective Date*

Contracts and leases entered into after the Petition Date by any Debtor, including any Executory Contracts and Unexpired Leases assumed by such Debtor, will be performed by the applicable Debtor or Reorganized Debtor liable thereunder in the ordinary course of its business. Accordingly, such contracts and leases (including any assumed Executory Contracts and Unexpired Leases) that have not been rejected as of the date of Confirmation will survive and remain unaffected by entry of the Confirmation Order.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each holder of an Allowed Claim (or such holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims in each applicable Class; *provided that*

distributions to holders of First Lien Claims and Second Lien Secured Claims shall occur on the Effective Date. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

    1.    <u>Delivery of Distributions</u>

        a.    Delivery of Distributions to First Lien Agent

Except as otherwise provided in the Plan, all distributions to holders of First Lien Claims shall be governed by the First Lien Credit Agreement and shall be deemed completed when made to the First Lien Agent, which shall be deemed to be the holder of all First Lien Claims for purposes of distributions to be made hereunder. The First Lien Agent shall hold or direct such distributions for the benefit of the holders of Allowed First Lien Claims, as applicable. As soon as practicable in accordance with the requirements set forth in this Article VI, the First Lien Agent shall arrange to deliver such distributions to or on behalf of such holders of Allowed First Lien Claims.

        b.    Delivery of Distributions to Second Lien Agent

Except as otherwise provided in the Plan or as reasonably requested by the Second Lien Agent, all distributions to holders of Second Lien Claims shall be governed by the Second Lien Credit Agreement and shall be deemed completed when made to the Second Lien Agent, which shall be deemed to be the holder of all Second Lien Claims for purposes of distributions to be made hereunder. The Second Lien Agent shall hold or direct such distributions for the benefit of the holders of Allowed Second Lien Claims, as applicable. As soon as practicable in accordance with the requirements set forth in this Article VI, the Second Lien Agent shall arrange to deliver such distributions to or on behalf of such holders of Allowed Second Lien Claims. All reasonable and documented fees and expenses of the Second Lien Agent arising in connection with the Confirmation and Consummation of the Plan, including, without limitation, with respect to distributions made to holders of Second Lien Lenders hereunder, which remain unpaid as of the Effective Date (or accrue thereafter) shall be paid by the Reorganized Debtors in the ordinary course of business following the Effective Date.

        c.    Delivery of Distributions to Senior Notes Indenture Trustee

Except as otherwise provided in the Plan or reasonably requested by the Senior Notes Indenture Trustee, all distributions to Holders of Senior Notes Claims shall be deemed completed when made to the Senior Notes Indenture Trustee, which shall be deemed to be the holder of all Senior Notes Claims for purposes of distributions to be made hereunder. The Senior Notes Indenture Trustee shall hold or direct such distributions for the benefit of the holders of Allowed Senior Notes Claims, as applicable. As soon as practicable in accordance with the requirements set forth in this Article VI, the Senior Notes Indenture Trustee shall arrange to deliver such distributions to or on behalf of such holders of Allowed Senior Notes Claims.

        d.    Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims (other than holders of First Lien Claims and Second Lien Claims) or Interests shall be made to holders of record as of the Distribution Record Date by the Reorganized Debtors: (1) to the signatory set forth on any of the Proofs of Claim Filed by such holder or other representative identified therein (or at the last known addresses of such holder if no Proof of Claim is Filed or if the Debtors have been notified in writing of a change of address); (2) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors after the date of any related Proof of Claim; (3) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtors have

not received a written notice of a change of address; or (4) on any counsel that has appeared in the Chapter 11 Cases on the holder's behalf.  Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan.  The Debtors and the Reorganized Debtors shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

2. <u>Minimum Distributions</u>

No fractional shares of New Common Stock shall be distributed, and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows: (a) fractions of one-half or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefore.  The total number of authorized shares of New Common Stock to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

Holders of Allowed Claims entitled to distributions of $50 or less shall not receive distributions, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its holder is forever barred pursuant to Article VIII from asserting that Claim against the Reorganized Debtors or their property.

3. <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any distribution to any holder is returned as undeliverable, no distribution to such holder shall be made unless and until the Reorganized Debtors have determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property shall be redistributed Pro Rata (it being understood that, for purposes of this Article VI.B.3, "Pro Rata" shall be determined as if the Claim underlying such unclaimed distribution had been Disallowed) without need for a further order by the Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any holder to such property or Interest in property shall be discharged and forever barred.

C. *Registration or Private Placement Exemption*

1. <u>New Common Stock Issued Pursuant to Section 4(2) of the Securities Act</u>

All shares of New Common Stock issued under the Plan will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance upon either (a) section 1145 of the Bankruptcy Code or (b) section 4(2) of the Securities Act or Regulation D promulgated thereunder.  All shares of New Common Stock issued pursuant to the exemption from registration set forth in section 4(2) of the Securities Act or Regulation D promulgated thereunder will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom.

Persons who purchase the New Common Stock pursuant to the exemption from registration set forth in section 4(2) of the Securities Act or Regulation D promulgated thereunder will hold "restricted securities."  Resales of such restricted securities would not be exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law.  Holders of restricted securities would, however, be permitted to resell New Common Stock without registration if they are able to comply with the applicable provisions of Rule 144 or Rule 144A under the Securities Act, or if such securities are registered with the Securities and Exchange Commission.  New Common Stock issued in connection with [the Backstop Holdback Equity, the Equity Grant, and certain shares of New Common Stock issued in the Rights Offering] shall be issued in reliance on section 4(2) of the Securities Act or Regulation D promulgated thereunder.

2.      New Common Stock Issued Pursuant to Section 1145 of the Bankruptcy Code

[Shares of New Common Stock issued under the Plan in reliance upon section 1145 of the Bankruptcy Code are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  The New Common Stock issued pursuant to section 1145 of the Bankruptcy Code (a) is not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Reorganized Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of Title 11 of the United States Code.  New Common Stock issued [to holders of Second Lien Secured Claims pursuant to Article III.B.4.b(a), to holders of General Unsecured Claims, and certain shares of New Common Stock issued in the Rights Offering] shall be issued in reliance on section 1145 of the Bankruptcy Code.]

Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Common Stock through the facilities of the DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Common Stock or under applicable securities laws.

The DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, the DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Stock is exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

D.      *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, Reorganized Parent and the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate.  The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

E.      *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

F.      *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims or Interests and no holder of a Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim.

G.      *Setoffs and Recoupment*

The Debtors or the Reorganized Debtors, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim it may have against the holder of such Claim.

H.      *Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Debtors or the Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor; *provided* that the Debtors shall provide 21 days' notice to the holder prior to any disallowance of such Claim during which period the holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Court.  Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such holder shall, within fourteen days of receipt thereof, repay or return the distribution to the Reorganized Debtors to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such holder to timely repay or return such distribution shall result in the holder owing the Reorganized Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Court; *provided* that the Debtors shall provide 21 days' notice to the holder of such Claim prior to any disallowance of such Claim during which period the holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Allowance of Claims*

After the Effective Date, each of the Debtors or the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including

the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

B.    *Claims and Interests Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtors, by order of the Court, shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Court.

C.    *Estimation of Claims*

Before or after the Effective Date, the Debtors or the Reorganized Debtors may (but are not required to) at any time request that the Court estimate any Disputed Claim or Disputed Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Court has ruled on any such objection, and the Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Court.  In the event that the Court estimates any Disputed, contingent, or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions), and the relevant Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Reorganized Debtors, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

D.    *Adjustment to Claims Without Objection*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Court.

E.    *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Deadline.

F.    *Disallowance of Claims*

Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Reorganized Debtors.  All Proofs of Claim Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such

indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim filed after the Claims Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Court, and holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Filed Claim has been deemed timely Filed by a Final Order.**

G.      *Amendments to Claims*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim may not be Filed or amended without the prior authorization of the Court and the Reorganized Debtors and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action, order, or approval of the Court.

H.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed as set forth in Article VII, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtors shall provide to the Holder of such Claim the distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided in Article III.B.

**ARTICLE VIII.
SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided  in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any intercompany claims resolved or compromised after the Effective

Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.      Term of Injunctions or Stays

        Unless otherwise provided herein or in a Final Order, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 362 of the Bankruptcy Code or otherwise and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date set forth in the order providing for such injunction or stay.

D.      *Release of Liens*

        **Except as otherwise specifically provided in the Plan, the New Credit Facilities Documents (including in connection with any express written amendment of any mortgage, deed of trust, Lien, pledge, or other security interest under the New Credit Facilities Documents), or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors. In addition, the First Lien Agent and the Second Lien Agent shall execute and deliver all documents reasonably requested by the Debtors, Reorganized Debtors, or administrative agent(s) for the New Credit Facilities to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.**

E.      *Debtor Release*

        **Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, on and after the Effective Date, the Released Parties are deemed expressly, unconditionally, generally, and individually and collectively, acquitted, released and discharged by the Debtors, the Reorganized Debtors, and the Estates, each on behalf of itself and its predecessors, successors and assigns, subsidiaries, affiliates, current and former officers, directors, principals, shareholders, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of the Debtors, any Claims asserted or assertable on behalf of any holder of any Claim against or Interest in the Debtors and any Claims asserted or assertable on behalf of any other entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, by statute or otherwise, that such releasing party (whether individually or collectively), ever had, now has or hereafter can, shall or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors'**

restructuring efforts, the Debtors' intercompany transactions (including dividends paid), any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the purchase, sale or rescission of the purchase or sale of, or any other transaction relating to any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan, the business or contractual arrangements between the Debtors, on the one hand, and the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders, each of the Sponsors, the Backstop Parties, or the Consenting Lenders, on the other hand, the restructuring of Claims and Interests before or during the Restructuring Transactions implemented by the Plan or any other transaction or other arrangement with the Debtors whether before or during the Restructuring Transactions, the negotiation, formulation or preparation of the Restructuring Transactions, the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement or any related agreements, any asset purchase agreement, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place or arising on or before the Effective Date related or relating to any of the foregoing, except for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; *provided* that nothing in the foregoing shall result in any of the Debtors' officers and directors waiving any indemnification Claims against the Debtors or any of their insurance carriers or any rights as beneficiaries of any insurance policies, which indemnification obligations and insurance policies shall be assumed by the Reorganized Debtors.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any of the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

F.    *Third Party Release*

Except as otherwise provided in the Plan, as of the Effective Date and to the fullest extent authorized by applicable law, each Releasing Party expressly, unconditionally, generally and individually and collectively releases, acquits and discharges the Debtors, Reorganized Debtors, and Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative Claims asserted or assertable on behalf of the Debtors, any Claims asserted or assertable on behalf of any holder of any Claim against or Interest in the Debtors and any Claims asserted or assertable on behalf of any other entity, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereinafter arising, in law, equity, contract, tort or otherwise, by statute or otherwise, that such Releasing Party (whether individually or collectively), ever had, now has or hereafter can, shall or may have, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' restructuring efforts, the Debtors' intercompany transactions (including dividends paid), any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, or any other transaction relating to any security of the Debtors, or any other transaction or other arrangement with the Debtors whether before or during the Restructuring Transactions, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan, the business or contractual arrangements between the Debtors, on the one hand, and the First Lien Agent, the First Lien Lenders, the Second Lien Agent, the Second Lien Lenders, each of the Sponsors, the Backstop Parties, or the Consenting Lenders, on the other hand, the restructuring of Claims and Interests before or during the Restructuring Transactions implemented by the Plan, the negotiation, formulation or preparation of the Restructuring Transactions, the Restructuring Support Agreement, the Plan, the Plan Supplement, the Disclosure Statement or any related agreements, any asset purchase agreement, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the

Restructuring Support Agreement, the Disclosure Statement, the Plan, the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place or arising on or before the Effective Date related or relating to any of the foregoing, except for any act or omission that constitutes fraud, gross negligence or willful misconduct as determined by a Final Order of a court of competent jurisdiction; *provided* that nothing in the foregoing shall result in any of the Debtors' officers and directors waiving any indemnification Claims against the Debtors or any of their insurance carriers or any rights as beneficiaries of any insurance policies, which indemnification obligations and insurance policies shall be assumed by the Reorganized Debtors.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any post-Effective Date obligations of any party or Entity under the Plan, any of the Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

G.      *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Exculpated Claim; *provided* that the foregoing "Exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined by a Final Order to have constituted gross negligence or willful misconduct.  The Exculpated Parties have participated in any and all activities potentially underlying any Exculpated Claim in good faith and in compliance with the applicable laws.

H.      *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, discharged pursuant to Article VIII.B of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Non-Debtor Subsidiaries, the Reorganized Debtors, the Released Parties, or the Exculpated Parties:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.  Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any party under the Plan or under any document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement) executed to implement the Plan from bringing an action to enforce the terms of the Plan or such document, instrument, or agreement (including those attached to the Disclosure Statement or set forth in the Plan Supplement) executed to implement the Plan.

I.      *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the

Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

J.       *Recoupment*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.       *Subordination Rights.*

Any distributions under the Plan to holders shall be received and retained free from any obligations to hold or transfer the same to any other holder and shall not be subject to levy, garnishment, attachment, or other legal process by any holder by reason of claimed contractual subordination rights.  Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.       *Conditions Precedent to the Confirmation Date*

It shall be a condition to Confirmation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.C hereof):

1.       The Confirmation Order shall have been approved by the Court in form and substance reasonably acceptable to the Debtors, the Sponsors (solely with respect to the Sponsor Consent Right), the Required Backstop Parties, and the Majority Consenting Lenders;

2.       The Confirmation Order shall, among other things:

    a.       authorize the Debtors and the Reorganized Debtors to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

    b.       decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent.

    c.       authorize the Reorganized Debtors to: (i) issue the New Common Stock pursuant to the exemption from registration under the Securities Act provided by either section 1145 of the Bankruptcy Code or section 4(2) of the Securities Act or Regulation D promulgated thereunder or other exemption from such registration or pursuant to one or more registration statements; and (ii) enter into any agreements contained in the Plan Supplement (including, without limitation, the Backstop Commitment Agreement, the Exit First Lien Credit Facility Documents, and the New Second Lien Loan Documents);

    d.       decree that the Confirmation Order shall supersede any Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

e.         authorize the implementation of the Plan in accordance with its terms; and

f.         provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax (including, any mortgages or security interest filing to be recorded or filed in connection with the New Credit Facilities).

3.       The Court shall have found that adequate information and sufficient notice of the Disclosure Statement, the Plan, and the Confirmation Hearing, along with all deadlines for voting on or objecting to the Plan have been given to all relevant parties in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017, 9019 and 3020(b); and

4.       The Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, each in form and substance reasonably acceptable to the Debtors, the Sponsors (solely with respect to the Sponsor Consent Right), the Required Backstop Parties, and the Majority Consenting Lenders (solely with respect to the Plan), shall have been Filed subject to the terms hereof.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.C hereof):

1.       The Confirmation Order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

2.       The Plan and the Plan Supplement, including any exhibits, schedules, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but prior to the Effective Date, shall be in form and substance reasonably acceptable to the Debtors, the Sponsors (solely with respect to the Sponsor Consent Right), the Required Backstop Parties, and the Majority Consenting Lenders (solely with respect to the Plan) and made in accordance with the Article X.A of the Plan;

3.       The Exit First Lien Credit Facility Documents in form and substance reasonably acceptable to the Debtors and the Required Backstop Parties shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation of the Exit First Lien Credit Facility shall have been waived or satisfied in accordance with the terms thereof, and the closing of the Exit First Lien Credit Facility shall have occurred, and the Debtors shall have received the proceeds of the Exit First Lien Credit Facility, which shall have no more than $650 million in borrowings outstanding and no less than $100 million in unused availability as of the Effective Date;

4.       The New Second Lien Loan Documents in form and substance reasonably acceptable to the Debtors and the Backstop Parties shall have been executed and delivered by all of the Entities that are parties thereto, and all conditions precedent to the consummation of the New Second Lien Facility shall have been waived or satisfied in accordance with the terms thereof, and the closing of the New Second Lien Facility shall have occurred;

5.       All conditions precedent to the issuance of the New Common Stock, other than any conditions related to the occurrence of the Effective Date, shall have occurred;

6.       The New Organizational Documents, in form and substance reasonably acceptable to the Required Backstop Parties, shall, if applicable, have been duly filed with the applicable authorities in the relevant jurisdictions;

7.      The Backstop Commitment Agreement shall not have terminated and shall be in full force and effect, and the Backstop Order, in form and substance reasonably acceptable to the Required Backstop Parties, shall have become a Final Order;

8.      All fees and expenses payable or owed to the Second Lien Agent and the Backstop Parties under the Restructuring Support Agreement, Backstop Commitment Agreement or Backstop Order, including the Backstop Expense Reimbursement and the Backstop Transaction Fee, shall have been paid in Cash, and the reasonable, documented fees and expenses of the First Lien Agent and the Second Lien Agent incurred as of the Effective Date shall have been paid in Cash;

9.      All governmental and material third party approvals and consents, including Court approval, necessary in connection with the transactions contemplated by this Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

10.     All documents and agreements necessary to implement this Plan shall have (a) been tendered for delivery and (b) been effected or executed by all Entities party thereto, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms of such documents or agreements (including, without limitation, the Backstop Commitment Agreement, the Exit First Lien Credit Facility Documents, and the New Second Lien Loan Documents); and

11.     The Restructuring Support Agreement shall not have terminated and shall be in full force and effect, with all prerequisites to assumption having been satisfied, and shall not be (i) identified on the Schedule of Rejected Executory Contracts and Unexpired Leases or (ii) the subject of a pending motion to reject Executory Contracts or Unexpired Leases, and the Debtors shall be in compliance therewith.

C.      *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article IX may be waived only by consent of the Debtors, the Required Backstop Parties, the Majority Consenting Lenders (solely with respect to a waiver of the Majority Consenting Lenders' consent rights set forth in Article IX.B.2), and the Sponsors (solely with respect to the Sponsor Consent Right) without notice, leave, or order of the Court or any formal action other than proceedings to confirm or consummate the Plan.

D.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

E.      *Effect of Non-Occurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (2) prejudice in any manner the rights of the Debtors, any holders of a Claim or Interest or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Subject to the limitations contained herein, the Debtors reserve the right to modify the Plan (*provided* that such modifications are in form and substance acceptable to the Majority Consenting Lenders, the Required Backstop

Parties, and the Sponsors (solely with respect to the Sponsor Consent Right)) and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan (*provided* that such alterations, amendments, or modifications are in form and substance acceptable to the Majority Consenting Lenders, Required Backstop Parties, and the Sponsors (solely with respect to the Sponsor Consent Right)) with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.    *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.    *Revocation or Withdrawal of the Plan*

Subject to the terms of the Restructuring Support Agreement, the Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the holders of Claims or the Non-Debtor Subsidiaries; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity, including the Non-Debtor Subsidiaries.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.    Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.    decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.    resolve any matters related to:  (a) the assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Reorganized Debtors amending, modifying, or supplementing, after the Confirmation Date, pursuant to Article V hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.        ensure that distributions to holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.        adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.        adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.        enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

9.        enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.        resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.        issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

13.        resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.H.1 hereof;

14.        enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.        determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement;

16.        adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.        consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Court order, including the Confirmation Order;

18.        determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.        hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.        hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or

the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

21.    enforce all orders previously entered by the Court;

22.    hear any other matter not inconsistent with the Bankruptcy Code;

23.    enter an order concluding or closing the Chapter 11 Cases; and

24.    enforce the injunction, release, and exculpation provisions set forth in Article VIII hereof.

As of the Effective Date, notwithstanding anything in this Article XI to the contrary, the New Credit Facilities Documents shall be governed by the respective jurisdictional provisions therein.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors or the Reorganized Debtors, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any holder of a Claim or debt has voted on the Plan.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.    *Dissolution of the Committee*

On the Effective Date, the Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases.  The Reorganized Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to the Committee after the Effective Date.

D.    *Reservation of Rights*

Prior to the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or Reorganized Debtors shall be served on:

> the Debtors:

> > Samson Resources Corporation:
> > Two West Second Street
> > Tulsa, Oklahoma 74103
> > Attn.:  Andrew Kidd

> > <u>with copies to:</u>

> > Kirkland & Ellis LLP
> > Kirkland & Ellis International LLP
> > 601 Lexington Avenue
> > New York, New York  10022
> > Attn.:  Joshua A. Sussberg, P.C., and Ryan J. Dattilo

> > Kirkland & Ellis LLP
> > Kirkland & Ellis International LLP
> > 300 North LaSalle Drive
> > Chicago, Illinois  60654
> > Attn.:  Brad Weiland

> the Second Lien Agent:    Willkie Farr & Gallagher LLP
> > 787 Seventh Avenue, New York, New York, 10019
> > Attn.:  Margot B. Schonholtz and Ana M. Alfonso

> the Sponsors:    Milbank Tweed Hadley & McCloy LLP
> > 28 Liberty Street
> > New York, New York 10005
> > Attn.:  Dennis F. Dunne and Lauren C. Doyle

G.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

H.      *Entire Agreement*

Except as otherwise indicated, the Plan, the Confirmation Order, the Plan Supplement, the Restructuring Support Agreement, and the New Credit Facilities Documents supersede all previous and contemporaneous

negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

I.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at http://www.GardenCityGroup.com/cases/SamsonRestructuring or the Court's website at www.deb.uscourts.gov. To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Court, the non-exhibit or non-document portion of the Plan shall control.

J.      *Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court shall be prohibited from altering or interpreting such term or provision to make it valid or enforceable, *provided* that at the request of the Debtors and subject to the reasonable consent of the Majority Consenting Lenders, the Required Backstop Parties, and the Sponsors (solely with respect to the Sponsor Consent Right), the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such terms or provision shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be acceptable to the Debtors, the Majority Consenting Lenders, the Required Backstop Parties, and the Sponsors (solely with respect to the Sponsor Consent Right). The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) nonseverable and mutually dependent.

K.      *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

L.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Court to close the Chapter 11 Cases.

Respectfully submitted, as of the date first set forth above,

Samson Resources Corporation (for itself and all Debtors)

By: _____
Name:    Philip W. Cook
Title:    Executive Vice President and Chief Financial Officer