**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| SAMSON RESOURCES CORPORATION, *et al.*,[1] | ) | Case No. 15-11934 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' APPLICATION FOR ENTRY OF AN
ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION
OF BLACKSTONE ADVISORY PARTNERS L.P. AS INVESTMENT BANKER FOR
THE DEBTORS AND DEBTORS IN POSSESSION, EFFECTIVE *NUNC PRO TUNC* TO
THE PETITION DATE AND WAIVING CERTAIN INFORMATION REQUIREMENTS
IMPOSED BY LOCAL RULE 2016-2**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), respectfully state the following in support of this application.[2]

### Relief Requested

1.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**:  (a) authorizing the employment and retention of Blackstone Advisory Partners L.P. ("Blackstone")[3] as investment banker for the Debtors in accordance with the terms and conditions of the engagement letter dated as of December 22, 2014 and amended as of August 14, 2015, (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Geodyne Resources, Inc. (2703); Samson Contour Energy Co. (7267); Samson Contour Energy E&P, LLC (2502); Samson Holdings, Inc. (8587); Samson-International, Ltd. (4039); Samson Investment Company (1091); Samson Lone Star, LLC (9455); Samson Resources Company (8007); and Samson Resources Corporation (1227).   The location of parent Debtor Samson Resources Corporation's corporate headquarters and the Debtors' service address is:  Two West Second Street, Tulsa, Oklahoma 74103.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the First Day Declaration.

[3]     As discussed in greater detail below, Blackstone Advisory Partners will be spun off from The Blackstone Group LP and combined with PJT Partners LP. PJT Partners will assume the engagement thereafter.

**Exhibit A** hereto and incorporated herein by reference, effective *nunc pro tunc* to the Petition Date (as defined herein); (b) approving the terms of Blackstone's employment, including the proposed compensation arrangements and the indemnification provisions set forth in the Engagement Letter, as modified pursuant to the Order, under section 328(a) of the Bankruptcy Code; and (c) modifying the time-keeping requirements of Local Rule 2016-2 and the guidelines (the "U.S. Trustee Guidelines") established by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") in connection with Blackstone's proposed engagement. In support of this application, the Debtors submit (a) the *Declaration of Steven Zelin* (the "Zelin Declaration"), which is attached hereto as **Exhibit B**, (b) the *Declaration of Kaori Curran* (the "Curan Declaration), and (c) respectfully state as follows.

**Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  The Debtors confirm their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), and rule 2014(a) of the Federal

2

Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rules 2014-1 and 2016-2(h).

<b><u>Background</u></b>

5.      The Debtors are a privately held onshore oil and gas exploration and production company with headquarters in Tulsa, Oklahoma and operations primarily located in Colorado, Louisiana, North Dakota, Oklahoma, Texas, and Wyoming.  The Debtors operate, or have royalty or working interests in, approximately 8,700 oil and gas production sites.

6.      Each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 16, 2015 (the "<u>Petition Date</u>"). The facts and circumstances supporting this motion are set forth in the *Declaration of Philip Cook in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 2], which is incorporated by reference.

7.      The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have concurrently filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

<b><u>Blackstone's Qualifications</u></b>

8.      Blackstone is an investment banking firm with its principal office located at 280 Park Avenue, New York, New York 10017.  As detailed in the Zelin Declaration, Blackstone's affiliate, the Blackstone Group L.P., is a leading global alternative asset manager and provider of financial advisory services listed on the New York Stock Exchange (ticker symbol: BX).  Blackstone's professionals have extensive experience working with financially troubled companies in complex financial restructurings.  Since 1991, Blackstone and its affiliates have advised on nearly 400 distressed situations, both in and out of bankruptcy proceedings, involving nearly $1.5 trillion of total liabilities.

3

9.     The members and senior executives of Blackstone's restructuring and reorganization practice have assisted and advised numerous chapter 11 debtors in the development of plans of reorganization and are experienced in analyzing restructuring and related chapter 11 issues.   Further, the members and senior executives of Blackstone's restructuring and reorganization practice have been particularly active in large, complex and high-profile bankruptcies and restructurings, having advised in the following chapter 11 reorganizations, among others: AbitibiBowater Inc.; Adelphia Communications Corporation; Ambac Financial Group, Inc.; Apex Silver Mines Ltd.; BPZ Resources, Inc; Caesars Entertainment Operating Company, Inc.; Cengage Learning, Inc.; Delta Air Lines, Inc.; Dynegy Inc.; Eastman Kodak Company; Edison Mission Energy; Endeavour International Corp.; Energy Future Holdings Corporation; Enron Corporation; Excel Maritime Carriers, Ltd.; Flag Telecom Holdings Limited; Flying J. Inc.; Genco Shipping & Trading Limited; General Motors Corporation; Global Crossing Ltd.; Houghton Mifflin Harcourt Publishing Company; Lee Enterprises Inc.; LightSquared Inc.; Los Angeles Dodgers LLC; LyondellBasell Industries; Milagro Exploration LLC; Mirant Corp.; NewPage Corporation; NTK Holdings, Inc.; Patriot Coal Corporation; Quicksilver Resources Inc.; Sabine Oil and Gas Corp.; SemGroup; TerreStar Networks Inc.; Tribune Company; Walter Energy, Inc.; W.R. Grace & Co.; and Winn-Dixie Stores, Inc.  In addition, the restructuring group has provided general restructuring advice to such major companies as Clearwire Corporation, Ford Motor Company, The Goodyear Tire & Rubber Company and Xerox Corporation.

10.    Since its engagement in December 2014, Blackstone has advised the Debtors in connection with their efforts to raise capital and explore restructuring and other strategic alternatives.  During this time, Blackstone has become intimately familiar with the Debtors'

4

businesses, affairs, assets and contractual arrangements.  Blackstone has worked closely with the Debtors and management to analyze the Debtors' financial positions and to assist the Debtors in evaluating various restructuring options.  Accordingly, Blackstone has the necessary background to deal effectively and efficiently with the many financial issues and problems that may arise in the context of the Debtors' chapter 11 cases.

11.    As a result of the prepetition work performed on behalf of the Debtors, Blackstone has acquired significant knowledge of the Debtors' financial affairs, debt structure, business operations, capital structure, key stakeholders, financing documents, and other related material information.  Likewise, in providing prepetition services to the Debtors, Blackstone's professionals have worked closely with the Debtors' management, board of directors, and other advisors.  If this application is approved, several of Blackstone professionals, all with substantial expertise in the areas discussed above, will continue to provide services to the Debtors.  Such personnel, including Senior Managing Director Steven Zelin and Managing Director Michael O'Hara, will lead the team of Blackstone professionals and will work closely with the Debtors' management and other professionals throughout the reorganization process.  Accordingly, as a result of Blackstone's representation of the Debtors prior to the commencement of these chapter 11 cases and Blackstone's extensive experience in representing chapter 11 debtors, Blackstone is well qualified to provide these services and represent the Debtors during their chapter 11 cases.

<u>**Services to Be Provided**</u>

12.    Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors propose to retain Blackstone to continue to render the following investment banking

services to the Debtors as necessary, appropriate, feasible, and as may be requested by the

Debtors:[4]

a.    assist the Debtors in evaluating the Debtors' businesses and prospects;

b.    assist the Debtors in developing the Debtors' long-term business plan and related financial projections;

c.    assist the Debtors in developing financial data and presentations to the Debtors' Board of Directors, various creditors, and other third parties;

d.    analyze the Debtors' financial liquidity and evaluate alternatives to improve such liquidity;

e.    provide strategic advice with regard to restructuring or refinancing the Debtors' existing or potential debt obligations or other claims, including, without limitation, senior debt, junior debt, trade claims, general unsecured claims, and preferred stock (collectively, the "Obligations");

f.    evaluate the Debtors' debt capacity and alternative capital structures;

g.    participate in negotiations among the Debtors and their creditors, suppliers, lessors, and other interested parties;

h.    value securities offered by the Debtors in connection with a Restructuring;

i.    assist in arranging financing for the Debtors, as requested by the Debtors;

j.    assist the Debtors in preparing marketing materials in conjunction with a possible Transaction;

k.    assist the Debtors in identifying potential buyers or parties in interest to a Transaction, assist in any due diligence process, and advise on the negotiation and implementation of a Transaction;

l.    assist and advise the Debtors concerning the terms, conditions, and impact of any proposed Transaction;

m.    provide expert witness testimony concerning any of the subjects encompassed by the investment banking services described in the Engagement Letter; and

---

[4]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.  The description of the Engagement Letter in this Application is a summary.  To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

KE 36236664

n.    provide such other advisory services as are customarily provided in connection with the analysis and negotiation of a Restructuring or a Transaction, as requested and mutually agreed to by the Debtors and Blackstone.

13.    If the Debtors request that Blackstone perform services not contemplated by the Engagement Letter, Blackstone and the Debtors will agree, in writing, on the terms for such services and seek the Court's approval thereof.  The services that Blackstone will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  The Debtors believe that the services will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases.  Specifically, Blackstone will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of services.

**Professional Compensation**

14.    In consideration of the services to be provided by Blackstone, and as more fully described in the Engagement Letter, subject to this Court's approval, the Debtors and Blackstone have agreed that Blackstone shall, in respect of its services, be compensated under the following fee structure (the "Fee Structure"):[5]

a.    Monthly Fee:  The Debtors will pay Blackstone a monthly advisory fee (the "Monthly Fee") in the amount of $175,000 per month, payable in cash, with the first Monthly Fee payable upon the execution of the Engagement Letter and additional installments of such Monthly Fee payable in advance on each monthly anniversary of the Effective Date.

b.    DIP Financing Fee:  The Debtors will pay Blackstone a DIP financing fee (the "DIP Financing Fee") for any debtor-in-possession financing arranged by Blackstone, at the Debtors' request, earned and payable upon the Debtors' receipt of a binding commitment letter.  If access to the financing is limited by orders of the Court, a proportionate fee shall be payable with

---

[5]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.  The description of the Engagement Letter in this Application is a summary.  To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control.

respect to each available commitment (irrespective of availability blocks, borrowing base, or other similar restrictions). The DIP Financing Fee will be calculated as 0.25% multiplied by the total issuance size of the DIP financing; *provided* that 50% of any DIP Financing Fee that is earned and paid to Blackstone will be credited against the Restructuring Fee if any DIP financing is raised from existing stakeholders.

c.    Capital Raising Fee:  The Debtors will pay Blackstone a capital raising fee (the "Capital Raising Fee") for any financing arranged by Blackstone from parties other than existing stakeholders, at the Debtors' request, earned and payable upon the Debtors' receipt of a binding commitment letter. The Capital Raising Fee will be calculated as 1.0% multiplied by the total issuance size of any debt financing, and 5.0% multiplied by the issuance amount of any equity financing. In the event that the financing arranged by Blackstone (and use of proceeds generated from such financing) is the only Restructuring undertaken, Blackstone, in its sole discretion, may choose to be paid either the Capital Raising Fee or the Restructuring Fee (as defined below), but not both.

d.    Restructuring Fee:  The Debtors will pay Blackstone an additional fee (the "Restructuring Fee") in the amount of $9,500,000, which fee will be reduced by 50% of the Monthly Fees up to the 16th monthly anniversary, and 100% of the Monthly Fees thereafter will be credited against any Restructuring Fee. The Restructuring Fee will be earned on earliest of (i) consummation of the Restructuring;[6] (ii) in the event that the Debtors attempt to implement a Restructuring through a prenegotiated plan of reorganization under Chapter 11, the receipt of sufficient commitments, agreements, or other expressions of intention to accept such plan that the Debtors elect to file a Chapter 11 case and therein represents to the Court that the Debtors will seek to confirm a plan based on a prenegotiated plan; and (iii) in the event that the Debtors solicit acceptances for a prepackaged plan of reorganization under Chapter 11 to implement the Restructuring, then on the date established as the voting deadline for such acceptances or rejections, *provided* that at least one class of creditors impaired by such plan has accepted such plan. The Restructuring Fee shall be payable, in immediately available funds, on the earliest of: (i) consummation of the Restructuring; and (ii) the first business day immediately following (x) in the event that the Debtors seek to confirm a prenegotiated plan, 50% upon the receipt of such commitments, agreements, or expressions of intentions to accept the prenegotiated plan, and 50% upon emergence, and (y) in the

---

[6]    For the purposes of the Restructuring Fee, a Restructuring will be deemed to have been consummated upon (i) the binding execution and effectiveness of all necessary waivers, consents, amendments, or restructuring agreements between the Debtors and their creditors involving the compromise of the face amount of such Obligations or the conversion of all or part of such Obligations into alternative securities, including equity, in the case of an out-of-court restructuring; or (ii) the execution, confirmation, and consummation of a Plan of Reorganization pursuant to an order of the Court, in the case of an in-court restructuring.

event the Debtors seek to confirm a prepackaged plan, 50% upon the deadline for delivery of acceptances or rejections of a prepackaged plan of reorganization, and 50% upon emergence, *provided* that at least one class of creditors impaired by such plan has accepted such plan. Notwithstanding the foregoing, (i) a Restructuring is specifically deemed to exclude any assumption at face value of Obligations in connection with the sale or disposition of any subsidiaries, joint ventures, assets, or lines of business of the Debtors, and (ii) the restructured Obligations shall exclude any Obligations in respect of which a Restructuring Fee has previously been paid.

e.   Transaction Fee:  Upon consummation of a Transaction, the Debtors will pay Blackstone a transaction fee (the "Transaction Fee"), payable in cash directly out of the gross proceeds of the Transaction calculated as: (i) 2.0% of all Consideration up to $50,000,000; plus (ii) 1.5% of all Consideration between $50,000,000 and $100,000,000; plus (iii) 1.0% of all Consideration between $100,000,000 and $200,000,000; or (iv) for any individual Transaction for Consideration above $200,000,000, a fee equal to 0.75% of all Consideration, subject to a minimum fee of $2,750,000; *provided*, *however*, that 25% of any Transaction Fee associated with a sale of less than substantially all assets of the Debtors, which is earned and paid to Blackstone, shall be credited against the Restructuring Fee.  The Debtors have the right to retain a banker other than Blackstone for the sale of any individual assets, and Blackstone will not receive a fee for such transaction if the Debtors retain a banker other than Blackstone.  Upon consummation of a Transaction in which substantially all assets of the Debtors are sold, Blackstone will be entitled to the greater of (i) the Transaction Fee and (ii) the Restructuring Fee.

f.   Expense Reimbursements:  The Debtors will reimburse Blackstone for all reasonable and documented out-of-pocket expenses incurred during the engagement, including, but not limited to, travel and lodging, direct identifiable data processing, document production, publishing services and communication charges, courier services, working meals, reasonable fees and expenses of Blackstone's counsel and other necessary expenditures, payable upon rendition of invoices setting forth in reasonable detail the nature and amount of such expenses.  The Debtors will pay Blackstone on the Effective Date and maintain thereafter a $50,000 expense advance for which Blackstone shall account upon termination of the Engagement Letter.

15.    The Debtors understand that the terms and conditions of Blackstone's employment are reasonable and comparable to compensation generally charged by investment bankers of a similar stature for comparable engagements, both in and out of court.  Blackstone's

KE 36236664

strategic and financial expertise, as well as its capital markets knowledge, financing skills, and restructuring capabilities, some or all of which has and will be required by the Debtors during the term of Blackstone's engagement, were important factors to the Debtors in determining the Fee Structure. Given the numerous issues that Blackstone may be required to address in these chapter 11 cases, Blackstone's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Blackstone's services for engagements of this nature in both out-of-court and chapter 11 contexts, the Debtors agree that the fee arrangements in the Engagement Letter are reasonable under the standards set forth below.

16.     The Debtors understand that the terms of Blackstone's employment and compensation, as described in the Engagement Letter, are consistent with employment and the type of compensation arrangements typically entered into by Blackstone when providing investment banking services.  Blackstone's employment and compensation arrangements are competitive with those entered into by other investment banking firms when rendering comparable services. In determining the Fee Structure and the reasonableness of such compensation, the Debtors compared Blackstone's fee proposal to comparable precedents.  After such comparison, followed by discussions and arm's-length negotiations, the Debtors concluded that the Fee Structure is in fact reasonable, market-based, and designed to compensate Blackstone fairly for its work.

17.     To the best of the Debtors' knowledge, information and belief, and except and to the extent disclosed in the Zelin Declaration, no promises have been received by Blackstone as to compensation in connection with these chapter 11 cases other than as outlined in the Engagement

10

Letter, and Blackstone has no agreement with any other entity to share any compensation received with any person other than the principals and employees of Blackstone.

18.    Blackstone intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, including any order approving this application (to the extent compliance is not waived) and consistent with the proposed compensation set forth in the Engagement Letter.

19.    Blackstone will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. However, because:  (a) it is not the general practice of investment banking firms such as Blackstone to keep detailed time records similar to those customarily kept by attorneys; (b) Blackstone does not ordinarily keep time records on a "project category" basis; and (c) Blackstone's compensation is based on a fixed Monthly Fee and fixed DIP Financing Fee, Capital Raising Fee, Restructuring Fee, and/or Transaction Fee, the Debtors respectfully request that Blackstone's professionals only be required to maintain records (in summary format) of the services rendered for the Debtors, including summary descriptions of those services, the approximate time expended in providing those services (in hourly increments), and the identity of the professionals who provided those services.  Blackstone will present such records to the Court in its fee applications.  Moreover, the Debtors respectfully request that Blackstone's professionals not be required to keep time records on a "project category" basis, that its non-investment banking professionals and personnel in administrative departments (including legal)

11

not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates.  To the extent that Blackstone would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

20.    Prior to the Petition Date, according to the Debtors' books and records, the Debtors paid Blackstone approximately $700,000 for fees and approximately $92,919 for reimbursement of expenses during the 90-day period before the Petition Date.  As of the Petition Date, the Debtors do not owe Blackstone any fees for services performed.  Separately, the Blackstone has received a prepetition expense deposit of $50,000 that will be applied against any prepetition expenses incurred but not yet received due to delay in third-party vendors in providing invoices, with the remaining balance, if any, credited against postpetition expenses.

**Indemnification**

21.    As part of the overall compensation payable to Blackstone under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, contribution, and reimbursement obligations, as more fully described in **Attachment A** of the Engagement Letter (the "Indemnification Agreement"). The Indemnification Agreement provides that the Debtors will indemnify and hold harmless Blackstone and certain "Indemnified Parties" (as defined in the Indemnification Agreement) from and against any losses, claims, damages, expenses and liabilities, whether they be joint or several (collectively, the "Liabilities"), related to, arising out of or in connection with the engagement incurred by an Indemnified Party in connection with Blackstone's engagement. The Debtors, however, will not be liable for any Liabilities that are finally judicially

12

KE 36236664

determined by a court of competent jurisdiction to have primarily resulted from the gross negligence, bad faith, willful misconduct, or fraud of any Indemnified Party.  However, the following conditions will apply with respect to any indemnification, reimbursement, or contribution pursuant to the Indemnification Agreement:

a.    All requests of Indemnified Parties for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity, reimbursement or contribution conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity, reimbursement or contribution is sought; *provided*, *however*, that in no event shall an Indemnified Party be indemnified in the case of its own bad faith, fraud, gross negligence or willful misconduct.

b.    In the event that an Indemnified Party seeks reimbursement from the Debtors for reasonable attorneys' fees in connection with a request by Indemnified Party for payment of indemnity, reimbursement or contribution pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Indemnified Party's own application (both interim and final) and such invoices and time records shall be subject to the approval of the Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

22.    The Engagement Letter's indemnification and contribution provisions were fully negotiated by the Debtors and Blackstone at arm's-length and in good faith, and the Debtors respectfully submit that these indemnification and contribution provisions of the Engagement Letter are reasonable, subject to the modifications set forth in the proposed Order. The Debtors believe that the indemnification provisions in the Engagement Letter are appropriate and reasonable for financial advisory engagements both out of court and in chapter 11 cases, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

KE 36236664

## No Duplication of Services

23.    The Debtors believe that the services provided by Blackstone will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, Blackstone will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and their professionals retained in these chapter 11 cases to avoid the unnecessary duplication of services.

## Blackstone's Disinterestedness

24.    To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Curran Declaration:  (a) Blackstone has no relevant connection with any of the Debtors, the Debtors' creditors, the Office of the United States Trustee (the "U.S. Trustee"), any person employed in the office of U.S. Trustee, or any other party with an actual or potential interest in these chapter 11 cases (or their respective attorneys or accountants); (ii) Blackstone (and Blackstone's professionals) are not creditors, equity security holders or insiders of any of the Debtors; (iii) neither Blackstone nor any of its professionals is or was, within two years of the Petition Date, a director, officer or employee of any of the Debtors; and (iv) neither Blackstone nor any of its professionals hold or represent an interest materially adverse to any of the Debtors, their estates or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with or interest in any of the Debtors, or for any other reason.  Accordingly, based upon its review of interested parties in these chapter 11 cases, Blackstone is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and Blackstone's employment is permissible under sections 327(a) and 328(a) of the Bankruptcy Code.  See 11 U.S.C. §§ 101(14); 327(a); 328(a); 1107(b).

25.    The Debtors' knowledge, information, and belief regarding the matters set forth herein are based upon, and made in reliance on the Curran Declaration.  Given the large number of parties in interest in these chapter 11 cases, despite the efforts to identify and disclose Blackstone's relationships with parties in interest in these chapter 11 cases, Blackstone is unable to state with certainty that every client relationship or other connection has been disclosed in the Curran Declaration.  Blackstone will make continued inquiries following the filing of the application to monitor for any matters that might affect its disinterested status.  To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Blackstone's retention are discovered or arise, Blackstone will use reasonable efforts to promptly file a supplemental declaration.

26.    The Debtors are informed that Blackstone will not share any compensation to be paid by the Debtors, in connection with services to be performed after the Petition Date, with any other person, other than principals and employees of Blackstone, to the extent required by section 504 of the Bankruptcy Code.

**<u>Basis for Relief</u>**

**I.    The Debtors Should be Permitted to Retain and Employ Blackstone on the Terms in the Engagement Letter Pursuant to Sections 327 and 328 of the Bankruptcy Code**

27.    The Debtors seek approval of the retention and employment of Blackstone pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code.  Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).  Section 327(a) of the Bankruptcy Code, in turn, authorizes a debtor in possession to employ

15

professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

28.     Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions. As the U.S. Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

29.     Additionally, Bankruptcy Rule 2016 and Local Rule 2016-2 require retained professionals to submit applications for payment of compensation in chapter 11 cases. Local Rule 2016-2(d) also requires retained professionals to submit detailed time entries that set forth, among other things, a detailed description of each activity performed, the amount of time spent on the activity (in tenth of an hour increments), the subject matter of the activity, and the parties involved with the activity at issue. Local Rule 2016-2(h), however, allows a retained professional to request a waiver of these requirements for cause.

16

30.     The Court's approval of the Debtors' retention of Blackstone in accordance with the terms and conditions of the Engagement Letter is warranted.  First, as discussed above and in the Curran Declaration, Blackstone satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code.[7]  Engaged prepetition, Blackstone had been advising the Debtors for a considerable period of time prior to the commencement of these chapter 11 cases and has already committed a significant amount of time and effort with respect to the transactions to be consummated pursuant to the Plan.  Blackstone is needed postpetition to continue to assist with negotiations, as necessary, to provide expert advice and testimony regarding financial matters related to the proposed transactions, and to enable the Debtors to discharge their duties as debtors and debtors in possession.  Blackstone has extensive experience and an excellent reputation in providing high-quality investment banking services to debtors and creditors in bankruptcy reorganizations, mergers and acquisitions, and other restructurings.  Blackstone has become familiar with the Debtors' business operations, capital structure, financing documents, and other material information and is able to assist the Debtors in their restructuring efforts.  The Debtors believe that Blackstone is well qualified to provide its services to the Debtors in a cost-effective, efficient, and timely manner.  Furthermore, as detailed above, Blackstone does not hold or represent an interest adverse to the estate and is disinterested.

---

[7]     Bankruptcy Rule 2014(a) requires that an application must be made for retention of professionals pursuant to section 327 of Bankruptcy Code.  Under Bankruptcy Rule 2014(a), such application shall: "state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee."  Additionally, the application "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections" to the parties in interest listed above.  Fed. R. Bankr. P. 2014.  Here, Bankruptcy Rule 2014 is satisfied by the contents of this Application and the Zelin Declaration.

KE 36236664

31.     In addition, the Debtors believe that the Fee Structure is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.    The Fee Structure reflects Blackstone's commitment to the variable level of time and effort necessary to perform the services contemplated by the Engagement Letter, Blackstone's particular expertise, and the market prices for Blackstone's services for engagements of this nature both out of court and in a chapter 11 context.    Indeed, the Debtors believe that the Fee Structure appropriately reflects:  (a) the nature and scope of services to be provided by Blackstone; (b) Blackstone's substantial experience with respect to investment banking services; and (c) the fee structures typically utilized by Blackstone and other leading investment banks and financial advisors who do not bill their clients on an hourly basis.    Notwithstanding the foregoing and pursuant to the Order, the U.S. Trustee retains all rights to object to Blackstone's fee application (including expense reimbursements) pursuant to section 330 of the Bankruptcy Code.

32.     As set forth above, and notwithstanding approval of the Engagement Letter under section 328 of the Bankruptcy Code, Blackstone intends to apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines, and any other applicable procedures and orders of the Court, with certain limited modifications.

33.     The Debtors request that the requirements of Local Rule 2016-2(d) and the U.S. Trustee Guidelines be tailored to appropriately reflect Blackstone's engagement and its compensation structure.    Blackstone has requested, pursuant to section 328(a) of the Bankruptcy Code, payment of its fees on a fixed-rate and/or fixed-percentage basis. Additionally, it is not the general practice of investment banking firms to keep detailed time

records similar to those customarily kept by attorneys.  As discussed above, however, Blackstone's restructuring personnel will keep summary time records in hourly increments describing their daily activities and the identity of persons who performed such tasks.  Apart from the time-recording practices described above, however, Blackstone's restructuring personnel do not maintain their time records on a "project category" basis.  As such, the Debtors request modification of the requirements pursuant to Local Rule 2016-2(h).

34.    Courts in this jurisdiction have approved relief similar to the relief requested in this application.  *See, e.g.*, *In re Endeavour Operating Corp.*, No. 14-12308 (KJC) (Bankr. D. Del. Nov. 10, 2014) [Docket No. 168]; *In re NTK Holdings, Inc.*, No. 09-13611 (KJC) (Bankr. D. Del. Dec. 4, 2009) [Docket No. 204]; *In re Abitibibowater Inc.*, No. 09-11296 (KJC) (Bankr. D. Del. Aug. 11, 2009) [Docket No. 836]; *In re Merisant Worldwide, Inc.*, No. 09-10059 (PJW) (Bankr. D. Del. Feb. 25, 2009) [Docket No. 146]; *In re Semcrude, L.P.*, No. 08-11525 (BLS) (Bankr. D. Del. Sept. 12, 2008) [Docket No. 1350].

## II.    The Indemnification and Contribution Terms of the Engagement Letter are Appropriate

35.    The indemnification and contribution provisions in the Engagement Letter, as modified by the Order attached hereto, were fully negotiated between the Debtors and Blackstone.  The Debtors and Blackstone believe that the indemnification provisions in the Engagement Letter are customary and reasonable for investment banking engagements both out of court and in chapter 11 cases.  The Debtors are seeking approval of the modified indemnification provisions consistent with other orders of the Court where Blackstone has been retained.  *See, e.g.*, *In re Los Angeles Dodgers LLC*, No. 11-12010 (KG) (Bankr. D. Del. Sept. 30, 2011) [Docket No. 505]; *In re Specialty Prods. Holding Corp.*, No. 10-11780 (PJW) (Bankr. D. Del. Oct. 10, 2014) [Docket No. 5081]; *In re NTK Holdings, Inc.*, No. 09-13611 (KJC)

(Bankr. D. Del. Dec. 4, 2009) [Docket No. 204]; *In re Abitibibowater Inc.*, No. 09-11296 (KJC) (Bankr. D. Del. Aug. 11, 2009) [Docket No. 836]; *In re Merisant Worldwide, Inc.*, No. 09-10059 (PJW) (Bankr. D. Del. Feb. 25, 2009) [Docket No. 146]; *In re Semcrude, L.P.*, No. 08-11525 (BLS) (Bankr. D. Del. Sept. 12, 2008) [Docket No. 1350].

36.     Accordingly, the Debtors respectfully submit that the terms of the modified indemnification provisions are reasonable and customary and should be approved in these chapter 11 cases.

37.     The Debtors also believe that employment of Blackstone effective *nunc pro tunc* to the Petition Date is warranted under the circumstances of these chapter 11 cases.  Blackstone has provided, and will continue to provide, valuable services to the Debtors regarding the contemplated restructuring transactions. *See, e.g.*, *In re Arkansas Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[T]he bankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power." (collecting cases)); *see also* Del. Bankr. L.R. 2014-1(b) ("If the retention motion is granted, the retention shall be effective as of the date the motion was filed, unless the Court orders otherwise.").

38.     Courts routinely grant *nunc pro tunc* relief in this jurisdiction.  *See, e.g.*, *In re Endeavour Operating Corp.*, No. 14-12308 (KJC) (Bankr. D. Del. Nov. 10, 2014) [Docket No. 168]; *In re Los Angeles Dodgers LLC*, No. 11-12010 (KG) (Bankr. D. Del. Sept. 30, 2011) [Docket No. 505]; *In re Specialty Prods. Holding Corp.*, No. 10-11780 (PJW) (Bankr. D. Del. Oct. 10, 2014) [Docket No. 5081]; *In re NTK Holdings, Inc.*, No. 09-13611 (KJC) (Bankr. D. Del. Dec. 4, 2009) [Docket No. 204]; *In re Abitibibowater Inc.*, No. 09-11296 (KJC) (Bankr. D. Del. Aug. 11, 2009) [Docket No. 836]; *In re Merisant Worldwide, Inc.*, No. 09-10059 (PJW)

(Bankr. D. Del. Feb. 25, 2009) [Docket No. 146]; *In re Semcrude, L.P.*, No. 08-11525 (BLS) (Bankr. D. Del. Sept. 12, 2008) [Docket No. 1350].

**III.    The Retention of Blackstone is Critical to the Debtors' Success**

39.    The Debtors submit that the retention of Blackstone is in the best interests of all parties in interest in these chapter 11 cases.  Blackstone is a preeminent investment banking firm that is intimately familiar with the Debtors' businesses.  Denial of the relief requested herein will deprive the Debtors of the assistance of uniquely qualified investment banking professionals who have served them for approximately nine months.  Indeed, if the Debtors were forced to engage a new investment banker who lacks a thorough understanding of the Debtors' businesses and the initiatives that have been implemented over the course of Blackstone's extensive engagement, such change would mandate the commitment of significant resources to educate a replacement. As discussed above, based on services performed to date, Blackstone has been integral to preparing the Debtors for these chapter 11 cases.

40.    Based on the foregoing, the Debtors submit that they have satisfied the requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules to support entry of an order authorizing the Debtors to retain and employ Blackstone in these chapter 11 cases on the terms described herein and in the Engagement Letter.

<u>**Notice**</u>

41.    The Debtors will provide notice of this motion to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the agent under the Debtors' first lien credit facility; (d) counsel to the agent under the Debtors' first lien credit facility; (e) the agent under the Debtors' second lien credit facility; (f) counsel to the agent under the Debtors' second lien credit facility; (g) the indenture trustee under the Debtors' 9.75% senior notes due 2020; (h) counsel to

certain majority holders of the existing common stock of the Debtors; (i) holders of the existing preferred stock of the Debtors; (j) counsel to holders of the existing preferred stock of the Debtors; (k) the United States Attorney's Office for the District of Delaware; (l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; (n) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; and (o) the state attorneys general for states in which the Debtors conduct business.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

42.     No prior request for the relief sought in this application has been made to this or any other court.


*[Remainder of page intentionally left blank]*

22

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein, and (b) granting such other relief as is just and proper.

Dated:  September 25, 2015                    */s/ Philip Cook*
Wilmington, Delaware                          Philip Cook
                                              Samson Resources Corporation
                                              Senior Vice President & Chief Financial
                                              Officer