## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| | Case No. 15-11934 (CSS) |
| Samson Resources Corporation, *et al.*,[1] | (Jointly Administered) |
| Debtors. | <u>Objection Deadline</u>:  December 29, 2015 at 4:00 pm<br><u>Hearing Date</u>:  January 5, 2016 at 10:00 am |

### ACTING UNITED STATES TRUSTEE'S MOTION FOR AN ORDER DIRECTING THE APPOINTMENT OF AN EXAMINER

Andrew R. Vara, Acting United States Trustee for Region 3 (the "<u>United States Trustee</u>"), through his counsel, files this motion (the "<u>Motion</u>") for the entry of an order pursuant to 11 U.S.C. §1104(c)(1) directing the appointment of an examiner, and respectfully represents as follows:

### Preliminary Statement

1.     The United States Trustee respectfully requests that the Court enter an order directing the appointment of an examiner under 11 U.S.C. § 1104(c) for limited scope of:

   i. examining and reporting on the Debtors' investigation on the theft of approximately $1.8 million of estate funds using one or more communications between the email account of the Debtors' CFO and another employee of the Debtors; and

   ii. examining allegations made by Landowners that the Debtors fraudulently miscalculated payments on account of royalty interests prior to the commencement of the bankruptcy cases.

---

1      The Debtors in this chapter 11 case, along with the last four digits of each Debtor's federal tax identification number, include:  Geodyne Resources, Inc. (2703); Samson Contour Energy Co. (7267); Samson Contour Energy E&P, LLC (2502); Samson Holdings, Inc. (8587); Samson-International, Ltd. (4039); Samson Investment Company (1091); Samson Lone Star, LLC (9455); Samson Resources Company (8007); and Samson Resources Corporation (1227). The location of parent Debtor Samson Resources Corporation's corporate headquarters and the Debtors' service address is: Two West Second Street, Tulsa, Oklahoma 74103.

2.     Not only is the appointment of an examiner mandated by 11 U.S.C. § 1104(c)(2) due to the size of the Debtors' unsecured debt, it is also in the best interests of the Debtors' estates and therefore justified under 11 U.S.C. § 1104(c)(1). The appointment of an examiner with the limited authority proposed herein is the only fully independent procedure available to ensure that the Theft (defined below) and the Landowner Allegations (defined below) are fully investigated and analyzed.

### Introduction

3.     Pursuant to (i) 28 U.S.C. § 1334, (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a), and (iii) 28 U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine this Motion.

4.     Pursuant to 28 U.S.C. § 586, the United States Trustee is charged with overseeing the administration of cases commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").   This duty is part of the United States Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts to guard against abuse and over-reaching to assure fairness in the process and adherence to the provisions of the Bankruptcy Code.  *See In re United Artists Theatre Co.*, 315 F.3d 217, 225 (3d Cir. 2003) ("United States Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings."); *United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 298 (3d Cir. 1994) ("It is precisely because the statute gives the United States Trustee duties to protect the public interest…that the Trustee has standing to attempt to prevent circumvention of that responsibility." ); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 499 (6th Cir. 1990) ("As Congress has stated, the United States

Trustees are responsible for 'protecting the public interest and ensuring that the bankruptcy cases are conducted according to [the] law").

5.      The United States Trustee has general standing to be heard on any issue pursuant to 11 U.S.C. § 307.

6.      The United States Trustee has statutory authority to seek the appointment of an examiner under 11 U.S.C. § 1104(c). [3]

## Factual and Procedural Background

7.      On September 16, 2015 (the "Petition Date"), Samson Resources Corporation and eight of its subsidiaries and affiliates (collectively, the "Debtors" or "Samson") commenced these voluntary chapter 11 cases which were procedurally consolidated for joint administration by this Court.  Docket Nos. 1 and 70.

8.      On September 30, 2015, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") under 11 U.S.C. § 1102.

9.      The Debtors are a privately held onshore oil and gas exploration and production company with operations primarily located in Colorado, Louisiana, North Dakota, Oklahoma, Texas and Wyoming.  *See Declaration of Philip Cook in Support of Chapter 11 Petitions and First Day Motions*, Docket No. 2.  The Debtors operate, or have royalty or working interests in, approximately 8,700 oil and gas production sites, which impacts approximately 7,500 oil and gas properties.  *Id.* at ¶¶ 5 and 10.

10.     In February of 2012, the Debtors issued $2.25 billion in unsecured notes bearing interest at 9.75% all due and payable in 2020.  *See* Docket Nos. 2 and 201 – 218.  Based on the information included in the Debtors' petitions, schedules and statement of financial

---

[3]      Pursuant to 11 U.S.C. § 1104(e), the United States Trustee is also required to seek the appointment of a trustee if there are reasonable grounds to suspect that certain members of management participated in actual fraud, dishonesty or criminal conduct in the management of a debtor.

affairs, that the Debtor's fixed, liquidated unsecured debts (other than debts for goods, services, taxes and debts owing to an insider) exceed $5 million.  *Id.*

### *Debtors' Email Hacking Incident and Theft of Funds*

11.     On November 17, 2015, according to Debtors' counsel, there was a theft (the "Theft") of approximately $1.8 million of estate funds (the "Funds").  An email was reportedly sent by an unknown person on that date from the email account of Philip Cook, the Debtors' chief financial officer (the "CFO" of "Mr. Cook"), directing an employee in the Debtors' Treasury Group to wire transfer the Funds from the Debtors' account at JPMorgan Chase Bank, N.A. to a third-party bank account in the name of Vertical Horizon Management LLC at the Regions Bank located in Birmingham, Alabama.

12.     Three days after the Theft, on November 20, 2015, Debtors' counsel notified the Office of the United States Trustee of the event, stating that an unknown person had apparently gained access to, and control of, the Samson email account of Mr. Cook.

13.     Debtors' counsel has reported to the United States Trustee that Regions Bank has been able to recover approximately $1.5 million of the Funds, and the remaining $300,000 might be covered by the Debtors' insurance.  In order to actually receive the funds, it appears that the Debtors may be required to enter into certain agreements with respect to any potential liability of one or more banks.

14.     As of the date of this Motion, the Debtors are unable to identify the person/entity who perpetrated the Theft, although they indicate that they are investigating the incident.

*Landowner Allegations – Royalty Interests*

15.     According to the Debtors' *Motion for Entry of Interim and Final Orders Authorizing Payment of (I) Mineral Payments and (II) Working Interest Disbursements* (Docket No. 7) (the "Mineral Payments Motion"), through a written agreement (an "Oil and Gas Lease"), owners of mineral interests sell or otherwise convey the exclusive right to explore, drill and produce such minerals from the land to a third-party (a "Working Interest Holder") in exchange for either a share of production or payments in lieu of a share of production ("Royalty Interests"). The Debtors are the Working Interest Holders. *See Mineral Payments Motion*, ¶ 8.

16.     The United States Trustee has received correspondence from various *pro se* landowners (the "Landowners") regarding the Royalty Interests they receive from the Debtors' in connection with certain Oil and Gas Leases ("Landowner Allegations").[4] *See also* Docket Nos. 152, 153, 154, 155, 156, 157, 158, 160 and 161. In their correspondence to the Office of the United States Trustee and in their filings with this Court, the Landowners assert the Debtors' over a period of years have intentionally and fraudulently miscalculated their Royalty Interest payments. As a result of the Debtors' miscalculation, the Landowners assert that the Debtors' have intentionally failed to pay the correct Royalty Interests to each Landowner.

17.     Counsel for the United States Trustee requested additional information from the Debtors in connection with the Landowners Allegations. Although the Debtors have asserted to the United States Trustee that the Royalty Interests that have been paid to the Landowners are accurate, there are several Landowners asserting allegations that span over many years prior to the Petition Date, and the United States Trustee believes that it is appropriate that

---

[4]     *Ness v. Samson Resources, et al.*, Case No. 15-CV-00063 pending in the United States District Court for the District of North Dakota (the "Ness Action"). In the Ness Action, the plaintiffs allege, among other things, that the Debtors have and are employing fraudulent accounting methods when calculating Royalty Interests, and as a result have over time not paid the plaintiffs the correct amount of Royalty Interests. The Ness Action has been stayed as a result of the Debtors' bankruptcy case.

an independent third-party is appointed to investigate the Landowner Allegations and report on the matter.

18.    For the reasons stated herein, the Court should appoint an examiner for the limited purpose of investigating and reporting to the Court and the parties-in-interest whether there are potential claims against the Debtors arising out of or in connection with the Landowner Allegations, and reviewing the Debtors' internal investigation in connection with the Theft. Not only is the appointment of an examiner mandated by section 1104(c)(2) of the Bankruptcy Code because of the size of the Debtors' debt in this case, it is also in the best interests of the Debtors' estates and therefore justified under section 1104(c)(1). The appointment of an examiner with the limited authority proposed herein is the only fully independent procedure available to ensure that the Theft and Landowner Allegations are fully investigated and analyzed.

## ARGUMENT

19.    Pursuant to 11 U.S.C. §1104(c), the court shall order the appointment of an examiner:

> . . . to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if -
>
> > (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or
> >
> > (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

11 U.S.C. § 1104(c)(2).

20.    The moving party that has the burden to demonstrate that an examiner

should be appointed. *See In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 636 (Bankr. S.D.N.Y. 2012).

21.     The language in section 1104(c)(1) of the Bankruptcy Code calling for the appointment of an examiner if "such appointment is in the interest of creditors, any equity security holders, and other interests of the estate" reflects the language contained in section 1104(a)(2) with regard to the appointment of a trustee.  However, the appointment of an examiner is profoundly different from the appointment of a trustee, as the appointment of an examiner merely causes an investigation, whereas the appointment of a trustee causes the supplanting of management.

22.     An examiner "typically investigate[s] the debtor's business …, but do[es] not replace the debtor in possession in handling the day-to-day affairs of the business." *In re Gliatech, Inc., et al.*, 305 B.R. 832, 835 (Bankr. N.D. Ohio 2004), quoting *United States v. Schilling (In re Big Rivers Elec. Corp.)*, 355 F.3d 415, 422 (6th Cir. 2004).  D*isclosure* and transparency are fundamental tenants of bankruptcy, and a crucial requirement to the effective functioning of the federal bankruptcy system. *See*, *In re Kane*, 628 F.3d 631, 636 (3d Cir. 2010).

23.     A request for the appointment of an examiner must be supported by the given facts and circumstances. *See*, *In re Gliatech*, 305 B.R. at 836, citing *In re Mechem Fin. Of Ohio, Inc.*, 92 B.R. 760, 761 (Bankr N.D. Ohio 1988).  The facts and circumstances of this case compel the appointment of an examiner.

***Appointment of an Examiner is in***
***The Best Interest of the Estates***

24.     Here, the appointment of an independent third-party to complete an unbiased investigation of the Debtors' internal investigation of Theft and is necessary to ensure Samson's honesty, competence, proper conduct and proper management of its affairs.  The

appointment of an examiner is also appropriate to investigate the existence and nature of the Theft, and Samson's current efforts to prevent such events from occurring in the future.

25. In addition, the appointment of an examiner is necessary to investigate the Landowner Allegations asserted by the Landowners in connection with the Royalty Interests paid by the Debtors to determine whether there is a systemic issue in connection with the Debtors' payment of Royalty Interests. In 2014, the Landowners and the related Royalty Interest generated $98.8 million of revenue each month on account of their Working Interests in the Oil and Gas Leases, which is a substantial, portion of the Debtors assets. *See Mineral Payments Motion*, ¶ 10. Examination of the Landowners Allegations and the practices of the Debtors in connection with same could address concerns raised by Landowners that may make up a significant class of claims against the Debtors' estates. If there are any issues associated with the Debtors' right to recoup the Working Interest the Court and parties in interest should know in advance of any plan process because this potential cloud on the Debtors' interest in the Working Interest could affect the plan process.

26. The appointment of an examiner is necessary and would benefit all parties-in-interest in this matter. *See In re New Century TRS Holdings, Inc.*, 407 B.R. 558, 566 (Bankr. D. Del. 2009) ("The Examiner performs his duties at the request of the Court, for the benefit of the debtor, its creditors and shareholders"); *In re Fibermark*, 339 B.R. 321, 325 (Bankr. D. Vt. 2006) ("The benefit of appointing an independent examiner is that he or she will act as an objective nonadversarial party who will review the pertinent transactions and documents, thereby allowing the parties to make an informed determination as to their substantive rights."); *In re Apex Oil Coo*, 101 B.R. 92, 99 9Bankr. E.D. Mo. 1989) ("The Examiner is appointed to act as an independent party to review without monetary interest,

transaction and documents.  The examiner is first and foremost disinterested and nonadversarial. The benefit of the examiner's investigative efforts flow solely to the debtor and to its creditors and shareholders.") (internal citations omitted).  It is in the best interest of all parties to this bankruptcy case that such an examination be conducted by an independent third party, a third party who is free from any potential taint from past events, and free from motivations of self-preservation and self-interest.

27.    An examiner must act as the term suggests, for the purpose of conducting an examination, not to act as a protagonist in the case.  *See*, *In re Loral Space & Communications Ltd., et al*., 313 B.R. 577, 583 (Bankr. S.D.N.Y. 2004), *rev'd*, 2004 U.S. Dist. LEXIS 25681.    It is generally understood that an "investigation" pursuant to Section 1104(c) is for the purpose of conducting a study 'of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, as the statute so clearly states.  *See Id*. at 585. The statute has been interpreted to provide for an investigation "of a particular transaction or series of transactions, in order to reveal ways and means to protect or augment the estate."  *Id*., citing *In re Gliatech*, 305 B.R. at 835.

28.    The United States Trustee's request for the appointment of an examiner is limited in scope (regarding the Theft and Landowner Allegations), and is expected to be short in duration.  The appointment of an examiner and the benefits of the examiner's investigation are for the benefit of the Debtors, their cases, creditors and shareholders.

***Appointment of an Examiner is Mandatory Under
Section 1104(c)(2) Because the Debtors' Unsecured Debt
Exceeds the Statutory Threshold***

29.    The appointment of an examiner is mandatory under section 1104(c)(2) of the Bankruptcy Code because the Debtors' unsecured debt exceeds the statutory threshold.  The requisite requirements of section 1104(c) of the Bankruptcy Code are plainly present in this case because the Debtors' unsecured debts are well in excess of $5 million.  *See In re Big Rivers Elec. Corp.*, 284 B.R. 580, 584 (W.D. Ky. 2002); *In re Schepps Food Stores*, 148 B.R. 27, 30 (Bankr. S.D. Tex. 1992).  Section 1104(c)(2) leaves a court with no discretion where, as here, the claims threshold is met.

30.    The majority of other courts addressing this issue have recognized the mandatory nature of an examiner appointment under section 1104(c)(2).  *See Revco D.S., Inc.*, 898 F.2d 498, 499 (6th Cir. 1990); *In re Loral Space & Commc'ns, Ltd.*, 2004 WL 2979785, at *5 (S.D.N.Y. Dec. 23, 2004) (finding that section 1104(c)(2) mandates the appointment of an examiner where the debt threshold is met and reversing the bankruptcy court's finding that if the requested appointment is appropriate, the bankruptcy court should to stretch to fashion a more appropriate job description for the examiner); *In re Vision Dev. Group of Broward County, LLC*, 2008 WL 2676827, at *3 (Bankr. S.D. Fla. June 30, 2008); *In re Mechem Fin. of Ohio, Inc.*, 92 B.R. 962, 965-66 (Bankr. N.D. Ohio 1988).

31.    Given that there is no dispute that the Debtors' debts exceed $5 million, the appointment of an examiner is warranted under 11 U.S.C. § 1104(c)(2).

***The Proposed Scope of the Examiner's
Investigation is Appropriate***

32.    Under 11 U.S.C. § 1106, a court-appointed examiner performs the duties set forth in 11 U.S.C. § 1106(a), which provides in relevant part that an examiner shall:

(3) except to the extent that the court orders otherwise, investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(4) as soon as practicable—

(A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate; and

(B) transmit a copy or a summary of any such statement to any creditors' committee or equity security holders' committee, to any indenture trustee, and to  such other entity as the court designates;

11 U.S.C. § 1106(a) (emphasis added).

33.     The broad mandate of section 1106 of the Bankruptcy Code plainly includes the more limited powers that the United States Trustee requests the examiner be vested with in this case, which relate to the examining and investigating the Debtors' internal investigation and reporting on the Theft, and the Landowner Allegations.  *See* 11 U.S.C. § 1106 (an examiner shall "investigate . . . any other matter relevant to the case or to the formulation of a plan."); *see also The Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548, 577 (3d Cir. 2003) ("An examiner's duties include investigation of the debtor, the debtor's business, and 'any other matter relevant to the case or to the formation of a plan.'").

34.     Only through the appointment of an examiner can an unbiased result be achieved. The appointment of an examiner will ensure the integrity of the chapter 11 process, help maintain confidence in the bankruptcy system, and in the process provide a valuable contribution to this case that will serve all constituents, creditors and shareholders alike.

## CONCLUSION

For the foregoing reasons, the United States Trustee respectfully requests that this Court enter an order directing the appointment of an examiner for the limited scope of: (i) examining and reporting on the Debtors' investigation on the Theft of the Funds; and (ii) examining the Landowner Allegations; and (iii) such other and further relief that the Court deems just, fair, and equitable.

Dated: December 15, 2015          Respectfully submitted,
       Wilmington, Delaware

                                  **ANDREW R. VARA**
                                  **ACTING UNITED STATES TRUSTEE**
                                  **REGION 3**

                                  By:  /s/ *Tiiara N. A. Patton*              .
                                        Tiiara N. A. Patton
                                        David L. Buchbinder
                                        Natalie M. Cox
                                        Trial Attorneys
                                        United States Department of Justice
                                        Office of the United States Trustee
                                        J. Caleb Boggs Federal Building
                                        844 King Street, Suite 2207, Lockbox 35
                                        Wilmington, Delaware 19801
                                        Phone: (302) 573-6491
                                        Fax:    (302) 573-6497